**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ANITA JEAN HAYES,** | ) | |
| **SALINDA EVE HAYES,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 22-CV-0230-CVE-SH** |
| | ) | <u>BASE</u> <u>FILE</u> |
| **SCOTT OWEN,** | ) | |
| **individual capacity and official capacity,** | ) | **Consolidated with:** |
| **JON COPELAND, official capacity,** | ) | **Case No. 22-CV-0231-CVE-SH** |
| **MICHAEL KITCHENS,** | ) | **Case No. 22-CV-0274-CVE-SH** |
| **individual capacity and official capacity,** | ) | **Case No. 22-CV-0275-CVE-SH** |
| **B. UNDERWOOD,** | ) | |
| **individual capacity and official capacity,** | ) | |
| **KRISTEN DAVIS, official capacity,** | ) | |
| **J. CUTLER,** | ) | |
| **individual capacity and official capacity,** | ) | |
| **J. INMAN,** | ) | |
| **individual capacity and official capacity,** | ) | |
| **B. BERENS,** | ) | |
| **individual capacity and official capacity,** | ) | |
| **R. BLACKARD,** | ) | |
| **individual capacity and official capacity,** | ) | |
| **W. JACOBS,** | ) | |
| **individual capacity and official capacity,** | ) | |
| **B. WANO,** | ) | |
| **individual capacity and official capacity,** | ) | |
| **A. WITT,** | ) | |
| **individual capacity and official capacity,** | ) | |
| **A. GALANIS,** | ) | |
| **individual capacity and official capacity,** | ) | |
| **WASHINGTON COUNTY SHERIFF'S** | ) | |
| **OFFICE,** | ) | |
| **WASHINGTON COUNTY BOARD OF** | ) | |
| **COMMISSIONERS,** | ) | |
| **JEFF PRENTICE, official capacity,** | ) | |
| **SUMMER SONG DAVIS,** | ) | |
| **individual and official capacity,** | ) | |
| **PATRICK JOSEPH BALLARD,** | ) | |
| **individual capacity and official capacity,** | ) | |
| | ) | |
| **Defendants/Consolidated** | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Plaintiffs Anita Jean Hayes and Salinda Eve Hayes (collectively, "plaintiffs"), appearing pro se, bring this action, under 42 U.S.C. § 1983, to vindicate the alleged violation of their civil rights arising from their arrests and subsequent detention at the Washington County Jail.  Before the Court are four motions:  a motion to dismiss filed by defendant Board of County Commissioners of the County of Washington ("the Board") on August 15, 2022 (Dkt. # 14); a motion to dismiss filed by defendants Washington County Sheriff Scott Owen and the Washington County Sheriff's Office ("WCSO") on August 15, 2022 (Dkt. # 15); a motion to dismiss filed by defendants Jon Copeland, Kristin Davis, Jared Cutler, Jordan Inman, Brooks Berens, Reed Blackard, Williams Jacobs, Braden Wano, Aaron Witt, and Andrew Galanis (collectively, "jail defendants")[1] on August 15, 2022 (Dkt. # 16) and a motion to dismiss filed by defendant Jeff Prentice on August 22, 2022 (Dkt. # 22).  Plaintiffs did not respond to any of these dismissal motions.

## I.      Procedural background

On May 25, 2022, plaintiffs filed two separate complaints for violation of civil rights in federal court.  Compare Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH (N.D. Okla.), with Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH (N.D. Okla.).  The complaint filed in Case No. 22-CV-0230-CVE-SH ("jail complaint") alleges violations of plaintiffs' Fourth, Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983.  Hayes et al. v. Owen et al., No. 22-CV-

---

[1] As further discussed below, all but one of these defendants are identified only in plaintiffs' complaint regarding their detention at the Washington County Jail.  For ease of discussion, the Court thus refers to these defendants, collectively, as the "jail defendants."

0230-CVE-SH, Dkt. # 1.[2]  The named plaintiffs are Anita Jean Hayes and Salinda Eve Hayes, and

plaintiffs name as defendants Washington County Sheriff Scott Owen, Undersheriff Jon Copeland,

Michael Kitchens, B. Underwood, Kristen Davis, J. Cutler, J. Inman, B. Berens, R. Blackard, W.

Jacobs, B. Wano, A. Witt, A. Galanis, the WCSO, and the Board.  The complaint filed in Case No.

22-CV-0231-CVE-SH ("arrest complaint") alleges violations of plaintiffs' First, Fourth, Eighth,

and Fourteenth Amendment rights under § 1983.  Hayes et al. v. Owen et al., No. 22-CV-0231-

CVE-SH, Dkt. # 1.  The named plaintiffs are Anita Jean Hayes and Salinda Eve Hayes, and

plaintiffs name as defendants Washington County Sheriff Scott Owen, Undersheriff Jon Copeland,

Lieutenant Jeff Prentice, Deputy Summer Song Davis, Deputy Patrick Joseph Ballard, the WCSO,

and the Board.

On May 31, 2022, plaintiffs filed two separate petitions in the District Court of Washington

County, Oklahoma.  Compare Hayes et al. v. Owen et al., No. CV-2022-0047, with Hayes et al. v.

Owen et al., No. CV-2022-0048.  The named parties and facts underlying the petition filed in Case

No. CV-2022-0047 ("jail petition") are identical to the May 25, 2022, jail complaint, and the

named parties and facts underlying the petition filed in Case No. CV-2022-0048 ("arrest petition")

are identical to the May 25, 2022, arrest complaint.[3]  On June 24, 2022, defendants in both state

court cases properly removed to federal court under 28 U.S.C. § 1331.  The jail petition was

subsequently assigned federal Case No. 22-CV-0274-CVE-SH, and the arrest petition was

---

[2] For consistency, the Court refers to the CM/ECF header pagination when citing the record.

[3] As previously stated, plaintiffs are proceeding pro se, and presumably filed the arrest complaint and arrest petition on behalf of M.D.H., who is a minor child.  But this Court previously dismissed M.D.H. as a party plaintiff because "a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney."  See Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 11, at 3 n.1 (quoting Meeker v. Kercher, 782 F.2d 153, 154 (10th Cir. 1986)); Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 24, at 1-2.

assigned federal Case No. 22-CV-0275-CVE-SH.  Defendants in all four proceedings are represented by the same counsel.  On June 27, 2022, the named defendants in the jail complaint filed a motion in Case No. 22-CV-0230-CVE-SH, asking the Court to consolidate all four cases.  Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 6, at 5.  By order filed August 1, 2022 (Dkt. # 11), the Court granted the motion and consolidated the cases.  Citing Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), several defendants now move to dismiss the arrest complaint and the jail complaint.

## II.     Plaintiffs' allegations[4]

### A.     Arrest complaint

On January 17, 2021, defendants Deputy Patrick Ballard and Deputy Summer Davis, both of whom are employed by the WCSO, responded to a 9-1-1 call about an apparent landlord-tenant dispute at a rural property in Dewey, Oklahoma.  Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 7.  Deputy Ballard "removed the front window and allowed the previous occupant to gain entry," despite plaintiffs' belief that the previous occupant had legally abandoned the residence and any personal property therein.  Id.  Plaintiffs went "to the property to secure the window that Deputy Ballard had removed."  Id.  During plaintiffs' interaction with Deputy Ballard and Deputy Davis, there was a young child, M.D.H., in the backseat of plaintiffs' vehicle, and Salinda was wearing a medical boot for a broken foot.  Id. at 8.  Salinda stood near the plaintiffs' vehicle, recording the interaction with her cell phone.  Id.  Deputy Ballard became "irritated with"

---

[4] Because the arrest complaint (Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1) and arrest petition (Hayes et al. v. Owen et al., No. 22-CV-0275-CVE-SH, Dkt. # 2-2) are virtually identical, the Court will cite the arrest complaint only for the relevant factual background. Similarly, because the jail complaint (Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1) and jail petition (Hayes et al. v. Owen et al., No. 22-CV-0274-CVE-SH, Dkt. # 2-2) are virtually identical, the Court will cite the jail complaint only for the pertinent factual allegations.

plaintiffs when they asked him to socially distance so plaintiffs could put on their face masks. <u>Hayes et al. v. Owen et al.</u>, No. 22-CV-0231-CVE-SH, Dkt. # 1, at 7.  Deputy Ballard asked plaintiffs for identification, and plaintiffs refused to provide it because they believed they are not legally required to identify themselves unless they have committed a crime.  <u>Id.</u> at 8.  Deputy Ballard argued with Salinda about whether a road leading to the property was a private road or county road.  <u>Id.</u>  Deputy Davis told plaintiffs to "shut up" and gave "two thumbs up when asked if she just said shut up," then told plaintiffs they needed to leave.  <u>Id.</u>

Shortly thereafter, the encounter with the deputies became physical.  Deputy Ballard arrested Salinda "for obstruction for failing to identify by yanking her left arm and throwing her into Deputy Davis."  <u>Hayes et al. v. Owen et al.</u>, No. 22-CV-0231-CVE-SH, Dkt. # 1, at 8.  Deputy Davis said, "you f***ing b***h, you hit me," "punch[ed] Salinda in the gut," then punched Salinda in the face seven times.  <u>Id.</u>  Deputy Ballard tackled Salinda, forcing her on top of Deputy Davis and "sandwich[ing]" Salinda between Davis, who was on the ground face up, and Ballard, who was pushing down on Salinda's back and "forcing [Salinda's] head down into Deputy Davis's chest."  <u>Id.</u>  Deputy Davis falsely stated, "do something," "she's got my gun."  <u>Id.</u> at 9.  Deputy Davis drew her gun, placed the barrel against Salinda's head, and then pointed her gun at Anita and M.D.H.  <u>Id.</u>  Davis's body camera was activated when she drew her gun.  <u>Id.</u>  M.D.H. screamed and ducked down into the floorboard of the backseat.  <u>Id.</u>  Deputy Ballard gave Salinda conflicting commands to get up and to sit down, then tasered her.  <u>Id.</u>  Deputy Ballard became sexually aroused and ejaculated in his pants while he was pressing against Salinda's back.  <u>Id.</u>  Deputy Davis kicked Salinda in her left side and told Anita, "You're next."  <u>Id.</u>  Deputy Ballard used his body weight to force his left knee into the center of Salinda's back and forced her face into the ground.  <u>Id.</u>  Salinda told the deputies she could not breathe and asked them to handcuff her quickly.  <u>Id.</u>  Deputy

Davis "wrench[ed] Salinda's thumbs back" while Deputy Ballard handcuffed Salinda.  Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 9.  Deputy Davis "stomped on Salinda's cell phone twice, ending the livestream."  Id.  Deputy Davis then turned her attention to Anita.

Deputy Davis attempted to grab Anita's cell phone and threw a punch, then grabbed Anita's cell phone and threw it on the ground where "a witness" picked it up.  Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 9.  Deputy Davis grabbed Anita's jacket, Anita immediately went "down to the ground," and Davis jumped on Anita's back and straddled Anita's hips.  Id.  Deputy Davis tasered Anita for nine seconds, and Deputy Ballard pulled Anita's arms behind her.  Id.  Deputy Davis told Deputy Ballard that she tasered Anita "because she was 'fed up with her."  Id.  Deputy Davis wrenched Anita's thumbs back while handcuffing her.  Id. at 10.  Anita shouted that she was having a panic attack.  Id.  Both deputies yanked Anita's handcuffed arms above her head and told her to get up.  Id.  Deputy Davis suggested that they drag Anita to Davis's patrol car.  Id.  Deputy Ballard and a Dewey police officer grabbed Anita by her elbow and ankles as Deputy Davis laced her fingers into Anita's fingers and Davis twisted Anita's wrists "the entire way to the" patrol car.  Id.

After both plaintiffs were placed in separate patrol cars, Deputy Davis "deliberately left the heat on" in her patrol car, with all four windows rolled up, said she was offering Anita air conditioning, and told Deputy Ballard to "let [plaintiffs] sit."  Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 10.  Plaintiffs sat in the patrol cars for over an hour while Deputy Davis searched plaintiffs' car.  Id.  Deputy Davis called Lieutenant Prentice and told him, "[T]his was not your typical call."  Id.  Plaintiffs asked to speak to a supervisor, and Deputy Ballard stated that Deputy Davis was the supervisor.  Id.  Anita asked for medical attention, and Deputy Davis told her that "the nurse was waiting at the jail."  Id.  Deputy Ballard told Deputy Davis that "they

should let Anita go because while she was a 'pain in the ass, she hasn't done anything.'"  Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 10.  In response, Deputy Davis said, "[W]e don't tase and let go, we have to charge her with something." Id.  When Deputy Davis transported Anita to the jail, Davis turned "the volume of her music exceedingly loud" and stated she was offering Anita "some music to accompany [her] ac." Id.  As they approached the jail, Anita again asked Deputy Davis for medical attention.  Id.  Deputy Davis responded by saying "this ain't no f***ing hotel service." Id.  When they arrived at the sallyport entrance of the jail, Deputy Davis told "jail staff" to drag Anita out of the patrol car and complained that Anita "stunk up [Davis's] car." Id.  Later, when Anita was in the booking area of the jail, Deputy Davis made "several sexual comments referring to the incident with Salinda." Id. at 11.

Sheriff Scott Owen "was aware" that plaintiffs' arrests "had been recorded and broadcasted live to Facebook." Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 11.

> Washington County Sheriff's Office, Sheriff Scott Owen, Undersheriff Jon Copeland, Lieutenant Prentice, Deputies Summer Song Davis, Patrick Joseph Ballard, and Washington County Board of Commissioners were all aware that Salinda and Anita's arrests were illegal, the search of their vehicle illegal, and the use of force was extremely excessive and unnecessary.

Id.  Plaintiffs filed complaints with the WCSO, Sheriff Owen, and the Board, regarding their arrests, search of the vehicle, and the excessive force used against them but "all" complaints "went ignored." Id.  The WCSO and Undersheriff Copeland "intentionally ignored Open Records requests made by the plaintiffs and denied them access to body camera footage, sallyport videos, use of force and incident reports, and jail videos with inculpatory evidence of misconduct." Id.

Based on these facts, plaintiffs assert violations of their constitutional rights under the First, Fourth, Eighth, and Fourteenth Amendments.  Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 5.  Plaintiffs allege they both suffered physical injuries and mental trauma resulting from their arrests.  Id. at 12.  Plaintiffs seek injunctive relief, specifically they request "improve[d]

7

de-escalation training for WCSO employees" and better "transparency in Washington County." Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 12.  Plaintiffs also seek $90 million in compensatory and punitive damages.  Id.

 **B. Jail complaint**

 Plaintiffs were booked into the Washington County Jail on January 17, 2021.  Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 30, at 4.  Upon her arrival at the jail, Anita, who was handcuffed and not resisting, "was dragged and forcefully removed from" Deputy Davis's patrol car.  Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1, at 9.  After she was booked into the jail, Anita "was put on the floor of a cell face down with her pelvis over a drain hole while Michael Kitchens with all of his bodyweight forced his knee into the center of [Anita's] back."  Id.  Anita was not resisting, and her handcuffs were removed.  Id.  "Several corrections officers including B. Underwood proceeded to stand on Anita's ankles and wrists while Defendant Kitchens remained forcibly on [Anita's] back."  Id.  Anita told "corrections officers that her wedding ring does not come off."  Id.  "The male corrections officer on Anita's left side ben[t] her pinky finger and force[d] it out and backwards."  Id.  Anita told "corrections officers that they are breaking her finger and her back, she can't breathe with all of their weight on her, and they are killing her."  Id.  Salinda, who was in a jail cell two cells away from Anita, heard "a male officer" tell Anita he would break her finger off.  Id.  Salinda heard Anita say that she needed medical attention and that the officers were "killing her."  Id.  Salinda also heard "the corrections officers laughing about causing Anita pain," and a "male correction officer" said "that his 'three year old acts better than this.'"  Id. at 9-10.  "All officers continued to use force until they [were] able to remove Anita's ring then they all [left]" Anita's cell.  Id. at 10.  Anita requested medical attention and a face mask, but those requests were denied.  Id.

At some point, "officers ordered Anita to come out of the cell." Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1, at 10. Anita refused, explaining that she could not leave the cell "because they had broken her back." Id. "Officers finally brought what they described as a 'party wagon' to remove Anita from the cell." Id. "Corrections officers forced Anita's injured hands and wrists to fingerprint her" then "wheel[ed] Anita back to the cell in the party wagon." Id.

Salinda was asked to provide Anita's name, but Salinda refused. Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1, at 10. Salinda was taken to a pod within the jail. Id. "Officers ask[ed] for Anita's name and she refuse[d] to answer any questions." Id. Anita told "officers and anyone within proximity that her rights are being violated." Id. "B. Underwood joke[d] about how stubborn [Anita] is with [Anita's] wife, Salinda Hayes." Id.

Anita was released from the jail on January 17, 2021, and Salinda was released from the jail on January 18, 2021. Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 30, at 4. When Anita was released, she first was wheeled out to the main booking area of the jail, then was "wheeled out of the jail in the party wagon and into the passenger side of her car." Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1, at 10. Upon her release, Anita was taken to the emergency room where her injuries were diagnosed and documented. Id. Anita has been "wheelchair bound" since her arrest. Id. at 11.

Plaintiffs filed complaints with Sheriff Owen, Undersheriff Copeland, and the Board regarding their treatment at the jail, but all complaints "went ignored." Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1, at 10.

Based on these facts, plaintiffs allege violations of their rights under the Fourth, Eighth, and Fourteenth Amendments. Id. at 7. Plaintiffs allege that, because of the detention, Anita

suffered physical injuries and mental trauma, and Anita suffered mental trauma.  <u>Hayes et al. v. Owen et al.</u>, No. 22-CV-0231-CVE-SH, Dkt. # 1, at 11.   Plaintiffs seek injunctive relief, specifically, they request "de-escalation training for jail staff & WCSO employees" and "easier access to [the] complaint process in Washington County."  <u>Id.</u> at 12.  Plaintiffs also seek $21 million in compensatory and punitive damages.  <u>Id.</u>

## III.   Dismissal standards

Dismissal of claims under Rule 12(b)(1) is appropriate if the district court lacks subject matter jurisdiction.  "Rule 12(b)(1) motions generally take one of two forms.  The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests."  <u>Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell</u>, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting <u>Maestas v. Lujan</u>, 351 F.3d 1001, 1013 (10th Cir. 2003)).

Dismissal of claims under Rule 12(b)(6) is appropriate if the facts alleged in the complaint fail to state a claim on which relief may be granted.  To withstand a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is plausible if the facts alleged "raise a reasonable expectation that discovery will reveal evidence" of the conduct necessary to establish plaintiff's claim.  <u>Id.</u> at 556; <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").  The complaint need not contain "detailed factual allegations," but it must contain "more than labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action."  <u>Bell Atl. Corp.</u>, 550 U.S. at 555.

When considering the sufficiency of the complaint, a court must accept as true all the well-pleaded factual allegations and construe them in the plaintiff's favor. Id. But the court may disregard legal conclusions or conclusory statements devoid of factual support. Id.; Iqbal, 556 U.S. at 678.

When a plaintiff appears pro se the court must liberally construe the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Like all plaintiffs, a pro se plaintiff bears the burden to "alleg[e] sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). But the rule of liberal construction eases that burden by permitting the court to overlook basic drafting errors and confusion of legal theories in determining whether the complaint can be "reasonably read . . . to state a valid claim on which the plaintiff could prevail." Id. At the motion-to-dismiss stage, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable." Straub v. BNSF Ry. Co., 909 F.3d 1280, 1287 (10th Cir. 2018) (quoting Bell Atl. Corp., 550 U.S. at 556). But dismissal is appropriate "when the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." Bell Atl. Corp., 550 U.S. at 558.

## IV.   Discussion

As previously stated, plaintiffs bring this action under 42 U.S.C. § 1983. To state a plausible claim for relief under § 1983, a plaintiff must allege facts demonstrating that (1) a "person" (2) acting under color of state law, (3) deprived the plaintiff of, or caused another to deprive the plaintiff of, (4) a right protected by the United States Constitution or other federal law. Dodds v. Richardson, 614 F.3d 1185, 1199-1200 (10th Cir. 2010); Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002). Under § 1983, a plaintiff can seek to impose liability against state officials in their individual capacities, in their official capacities, or in both capacities.

When a plaintiff sues a defendant in his or her individual capacity, the defendant "may be subject to personal liability and/or supervisory liability." Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011). To impose personal liability a plaintiff must allege facts showing the defendant's "personal involvement in the alleged constitutional violation. Id. To "impose liability upon a defendant-supervisor," who did not personally participate in the alleged violation, a plaintiff must allege facts "show[ing] that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" Brown, 662 F.3d at 1164 (quoting Dodds, 614 F.3d at 1199).

When a plaintiff sues a defendant in his or her official capacity, the suit is "essentially another way of pleading an action against the county or municipality [the official] represent[s]." Porro v. Barnes, 624 F.3d 1322, 1328 (10th Cir. 2010). But a county "may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of Cty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997). Rather, a county may be liable only under a theory of municipal liability. Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978). To state a plausible municipal-liability, or Monell, claim, a plaintiff must allege facts demonstrating "(1) the existence of a municipal policy or custom by which the plaintiff was denied a constitutional right and (2) that the policy or custom was the moving force behind the constitutional deprivation." Sanders v. Glanz, 138 F. Supp. 3d 1248, 1254 (N.D. Okla. 2015). "A plaintiff can demonstrate a "municipal policy or custom" through an officially promulgated policy; a custom or persistent practice; a single decision by an official with final decision-making authority; ratification by an official with final decision-making authority of subordinates' decisions; or deliberately indifferent training that

results in the violation of plaintiff's federally protected rights." Gooding v. Ketcher, 838 F. Supp. 2d 1231, 1238 (N.D. Okla. 2012).

A.     **The Board's motion to dismiss (Dkt. # 14)**

Plaintiffs name the Board as a defendant in both complaints and by suing the Board, rather than individual Board members, effectively assert municipal liability claims against Washington County for the alleged violations of plaintiffs' rights under the First, Fourth, Eighth, and Fourteenth Amendment rights. In the arrest complaint, plaintiffs allege the Board (1) was "aware" that plaintiffs' arrests and the search of plaintiffs' vehicle were "illegal," (2) was "aware" that excessive force was used against plaintiffs, and (3) ignored plaintiffs' complaints. Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 11. In the jail complaint, plaintiffs allege they filed "numerous complaints" with the Board regarding their treatment at the jail, but all complaints "went ignored." Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1, at 10.

The Board moves to dismiss all claims asserted against it for three reasons. The Board contends: (1) it is not a proper party; (2) plaintiffs' claims against the Board are duplicative of plaintiffs' claims against Sheriff Owen in his official capacity; and (3) plaintiffs lack standing to seek prospective injunctive relief. Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 14, at 4-12.

The Court agrees with the Board that plaintiffs' claims against the Board are redundant with its claims against Sheriff Owen in his official capacity. To the extent plaintiffs claim Washington County may be liable for the alleged misconduct of WCSO deputies or jail staff and for allegedly failing to provide adequate medical care to Anita while she was detained at the Washington County Jail, the Court agrees that those municipal liability claims should be asserted against Sheriff Owen, in his official capacity, not the Board. See OKLA. STAT. tit. 19, §§ 513, 547;

Estate of Crowell ex rel. Boen v. Bd. of Cnty. Comm'rs of Cleveland Cnty., 237 P.3d 134, 142 (Okla. 2010) (explaining that, "[u]nder Oklahoma law, the sheriff is the final policymaker for a county jail," and is responsible for providing medical care to those in custody at the county jail, and that a board of county commissioners "has no statutory duty to hire, train, supervise, or discipline county sheriffs or deputies").  The Court therefore grants the Board's motion to dismiss and dismisses the arrest complaint and the jail complaint, in part, as to all claims asserted against the Board.

### B.     Lieutenant Prentice's motion to dismiss (Dkt. # 22)

Plaintiffs name WCSO Lieutenant Jeff Prentice as a defendant only in the arrest complaint and sue Prentice, only in his official capacity, for the alleged violations of their rights under the First, Fourth, Eighth, and Fourteenth Amendments.  Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 1, 4-5.

Lieutenant Prentice moves to dismiss all claims against him for four reasons.  He contends: (1) he has no "official capacity" because he has no final policymaking authority; (2) even if he could be sued in his official capacity, plaintiffs fail to state any plausible municipal liability claims; (3) plaintiffs fail to state any plausible First and Eighth Amendment claims; and (4) plaintiffs lack standing to seek prospective injunctive relief.  Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 22, at 5-11.

For several reasons, the Court agrees that plaintiffs' official capacity claims against Lieutenant Prentice should be dismissed.  First, by suing Prentice only in his official capacity, plaintiffs effectively seek to hold Washington County liable for the alleged constitutional violations under a theory of municipal liability.  As Prentice argues, Sheriff Owen, not Prentice, has final policymaking authority regarding the hiring, training, and discipline of WCSO deputies.

14

Estate of Crowell, 237 P.3d at 142.  Thus, any official capacity claims asserted against Prentice in the arrest complaint are redundant with the official capacity claims asserted against Sheriff Owen in the arrest complaint.

Second, as Lieutenant Prentice argues, plaintiffs fail to state any plausible First Amendment claims under a theory of municipal liability.  Plaintiffs mention the First Amendment only in the arrest complaint.  But their specific claims and the factual allegations that they rely on to support any First Amendment claims are not clear.  Generously reading the arrest complaint, the Court finds that plaintiffs may be asserting that Deputy Davis or Deputy Ballard violated their rights to free speech by asking them to identify themselves or by arresting them in retaliation for recording their interactions with the deputies, or that Deputy Davis violated their rights to free speech when she told plaintiffs to shut up or when she took plaintiffs' phones and ended Salinda's Facebook livestream.  Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 7-11. But even if this accurately describes plaintiffs' First Amendment claims, nothing in the arrest complaint suggests, plausibly or otherwise, that an existing Washington County policy or custom was the moving force behind the alleged violations of plaintiffs' First Amendment rights.  Sanders, 138 F. Supp. 3d at 1254.  On the facts alleged, it is not plausible that Washington County could be liable for any alleged violations of plaintiffs' rights under the First Amendment under a theory of municipal liability.

Third, the Court agrees with Prentice that plaintiffs fail to state any plausible Eighth Amendment claims in the arrest complaint.  At all times relevant to plaintiffs' claims that they were subjected to the use of excessive force during their arrests, plaintiffs were protected by the Fourth Amendment, not the Eighth Amendment.  Porro, 624 F.3d at 1325-26 (10th Cir. 2010). Because the facts alleged in the arrest complaint cannot establish that any individual defendant

violated plaintiffs' rights under the Eighth Amendment, plaintiffs also cannot establish that Washington County could be liable, under a theory of municipal liability, for any Eighth Amendment violations related to plaintiffs' arrests.  See Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers").  And while Prentice does not appear to discuss the plausibility of any Fourteenth Amendment claims plaintiffs assert in the arrest complaint, the same analysis applies to those claims as well.  Porro, 624 F.3d at 1325-26.  As a result, all Eighth Amendment and all Fourteenth Amendment claims asserted in the arrest complaint against all defendants shall be dismissed.

For these reasons, the Court grants Lieutenant Prentice's motion to dismiss and dismisses the arrest complaint, in part, as to all claims asserted against Prentice[5] and as to all Eighth Amendment and all Fourteenth Amendment claims asserted against all defendants.

### C.     Jail defendants' motion to dismiss (Dkt. # 16)

Plaintiffs name defendants Undersheriff Jon Copeland, Kristin Davis, Jared Cutler, Jordan Inman, Brooks Berens, Reed Blackard, William Jacobs, Braden Wano, Aaron Witt, and Andrew Galanis as defendants in the jail complaint.  Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1, at 1-6.  In the jail complaint, plaintiffs purport to assert only official capacity claims against Undersheriff Copeland and Kristin Davis, and purport to assert individual capacity and

---

[5] Plaintiffs do not appear to sue Lieutenant Prentice in his individual capacity.  However, to the extent the arrest complaint could be construed as attempting to assert individual capacity claims against Prentice, plaintiffs fail to state any claims on which relief could be granted.  Plaintiffs' sole allegation about Prentice's involvement in their arrests is that he received a phone call from Deputy Davis describing the arrests as atypical.  Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 10.  This allegation does not support any plausible claims against Prentice, in any capacity.

official capacity claims against the remaining jail defendants.  <u>Hayes et al. v. Owen et al.</u>, No. 22-CV-0230-CVE-SH, Dkt. # 1, at 1-6.  Plaintiffs also name Undersheriff Copeland as a defendant in the arrest complaint, and, in that complaint, plaintiffs assert claims against Copeland in his individual and official capacity.  <u>Hayes et al. v. Owen et al.</u>, No. 22-CV-0231-CVE-SH, Dkt. # 1, at 1-2, 4.

The jail defendants move to dismiss all claims against them for four reasons.  They contend (1) none of the jail defendants has an "official capacity" because none has final policymaking authority; (2) none of the jail defendants was personally involved in the alleged constitutional violations; (3) plaintiffs do not state any plausible First or Eighth Amendment claims; and (4) to the extent jail defendants are sued in their individual capacities, they have qualified immunity. <u>Hayes et al. v. Owen et al.</u>, No. 22-CV-0230-CVE-SH, Dkt. # 16, at 4-12.

For the following reasons, the Court grants in part and denies in part the jail defendants' dismissal motion.  First, the Court agrees that all official capacity claims asserted in the jail complaint against the jail defendants should be dismissed.  As previously discussed, any official capacity claims plaintiffs assert in the jail complaint to hold Washington County liable for the alleged constitutional violations are properly asserted against Sheriff Owen, the county official with final policymaking authority over the operation of the jail and the conduct of WCSO and jail employees.  <u>Estate of Crowell</u>, 237 P.3d at 142.  Plaintiffs' official capacity claims asserted against the jail defendants are therefore redundant with the official capacity claims asserted against Sheriff Owen in the jail complaint and shall be dismissed.  Likewise, any official capacity claims plaintiffs assert against Undersheriff Copeland in the arrest complaint are redundant with the official capacity claims plaintiffs assert against Sheriff Owen in the arrest complaint and shall be dismissed.

17

Second, the Court also agrees that plaintiffs' allegations in the jail complaint fail to state any plausible Eighth Amendment claims.[6]   At all times relevant to plaintiffs' detention at the Washington County Jail, plaintiffs were pretrial detainees protected by the Fourteenth Amendment, not the Eighth Amendment.  Porro, 624 F.3d at 1325-26.  Because the facts alleged in the jail complaint cannot establish that any individual defendant violated plaintiffs' rights under the Eighth Amendment, plaintiffs also cannot establish that Washington County could be liable, under a theory of municipal liability, for any Eighth Amendment violations related to plaintiffs' detention.  Hinton, 997 F.2d at 782.  And while the jail defendants do not appear to discuss the plausibility of any Fourth Amendment claims plaintiffs assert in the jail complaint, the same analysis applies to those claims as well.  Porro, 624 F.3d at 1325-26.  As a result, all Fourth Amendment and all Eighth Amendment claims asserted in the jail complaint against any defendants shall be dismissed.

Third, the Court agrees with the jail defendants that plaintiffs do not plausibly allege in the jail complaint any violations of Salinda Hayes's Fourteenth Amendment rights.   Plaintiffs' allegations show only that Salinda was detained in a jail cell near Anita, overheard the alleged use of excessive force against Anita, and heard Anita say that she needed medical care.  Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1, at 9-10.   There are no allegations plausibly suggesting that Salinda herself was subjected to the use of excessive force or denied adequate medical care while detained at the jail.  Id.   Thus, to the extent plaintiffs assert Fourteenth

---

[6] The jail defendants also argue that plaintiffs fail to state any plausible First Amendment claims.  But the jail complaint alleges only violations of plaintiffs' rights under the Fourth, Fourteenth, and Eighth Amendments.  The Court therefore disregards the jail defendants' arguments regarding any First Amendment claims.

Amendment claims in the jail complaint arising from Salinda's detention, those claims shall be dismissed as to all defendants.

Fourth, the Court disagrees with the jail defendants' argument that all individual capacity claims asserted against them should be dismissed for failure to state a claim. The jail defendants correctly argue that personal participation in an alleged constitutional violation is essential to imposing liability against an individual defendant under § 1983. Brown, 662 F.3d at 1163. And plaintiffs who sue multiple defendants must provide fair notice to each defendant of the claims that each defendant must defend against. Robbins v. Oklahoma, 519 F.3d 1242, 1249-50 (10th Cir. 2008). Here, many of plaintiffs' allegations in the jail complaint refer to the alleged misconduct of "[s]everal corrections officers," "corrections officers," "a male officer," "the male corrections officer on Anita's left side," "one male corrections officer," "all officers," and "officers." Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1, at 9-10. The jail defendants argue these collective allegations "do not distinguish in any way what acts they consider attributable to any of the [jail defendants]," thereby leaving "many" of them "in confusion as to how the [p]laintiffs came to associate them with the incident underlying this case as they were either not on duty or never had any contact with the [p]laintiffs." Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 16, at 6-7. At this stage of the litigation, the Court finds plaintiffs' collective allegations sufficient to withstand the jail defendants' request to dismiss all individual capacity claims asserted against them in the jail complaint. As the jail defendants' argument acknowledges, the jail complaint describes a sufficiently narrow "incident" that occurred at a specific time on a specific date at the Washington County Jail. Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 1, at 9-10. At most, those jail defendants who are sued in their individual capacities are being asked to defend against two Fourteenth Amendment claims, one

alleging corrections officers used excessive force against Anita and one alleging corrections officers were deliberately indifferent to Anita's need for medical care. Further, as the jail defendants' argument recognizes, at least some jail defendants may have already contemplated how to defend against those claims. See Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 16, at 6-7 (asserting some jail defendants were "not on duty or never had any contact with the [p]laintiffs"). As one federal district court recently explained:

> It's true that liability for an individual-capacity claim under section 1983 hinges on a defendant's personal involvement in the deprivation of a constitutional right. See Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L.Ed.2d 114 (1985). But at this early stage, "an allegation directed at multiple defendants can be adequate to plead personal involvement." Rivera v. Lake County, 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013) (citing Brooks v. Ross, 578 F.3d 574, 582 (7th Cir. 2009)). In any case in which "the plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery." Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009). So the "initial inability to identify the injurers is not by itself a proper ground for the dismissal of the suit." Id. The "children's game of pin the tail on the donkey" is not a "proper model for constitutional tort law." Id. (citation omitted).

Hill v. Cook Cnty., 463 F. Supp. 3d 820, 836 (N.D. Ill. 2020). Contrary to the jail defendants' argument, plaintiffs' collective allegations regarding the alleged actions and omissions of several corrections officers, only some of whom plaintiffs have been able to identify by name absent further pretrial discovery, does not support the jail defendants' request for dismissal of Anita's Fourteenth Amendment excessive force and deliberate indifference claims as asserted in the jail complaint against Jared Cutler, Jordan Inman, Brooks Berens, Reed Blackard, William Jacobs, Braden Wano, Aaron Witt, and Andrew Galanis, in their individual capacities. And, because further discovery may lead plaintiffs to abandon their claims against at least some of the jail defendants they have sued in their individual capacities, the Court declines to consider the jail defendants' blanket assertion of qualified immunity at this stage of the litigation.

Fifth and finally, to the extent Undersheriff Jon Copeland seeks dismissal of all individual capacity claims asserted against him in the arrest complaint, the Court agrees that dismissal is appropriate. In the arrest complaint, plaintiffs purport to sue Copeland in his individual and official capacity. Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 1-2, 4. The Court has already concluded that the official capacity claims shall be dismissed as redundant with the official capacity claims asserted against Sheriff Owen. And, on the facts alleged, plaintiffs fail to state any plausible claims that Undersheriff Copeland could be personally liable for the alleged violations of their federally protected rights. Plaintiffs' sole allegation in the arrest complaint regarding Undersheriff Copeland is that he "intentionally ignored Open Records requests made by the plaintiffs and denied them access to body camera footage, sallyport videos, use of force and incident reports, and jail videos with inculpatory evidence of misconduct." Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 11. These facts do not plausibly allege a constitutional violation and thus fail to state a claim on which relief may be granted under § 1983.

Based on the foregoing, the Court grants in part and denies in part the jail defendants' motion to dismiss. The Court dismisses the jail complaint, in part, as to: (1) all official capacity claims asserted against the jail defendants; (2) all Eighth Amendment and Fourth Amendment claims asserted against all defendants; and (3) all Fourteenth Amendment claims alleging violations of Salinda Hayes's rights to be free from the use of excessive force or to be provided adequate medical care asserted against all defendants. The Court also dismisses the arrest complaint, in part, as to all claims asserted against Undersheriff Jon Copeland.

### D.    Sheriff Owen's and the WCSO's motion to dismiss (Dkt. # 15)

Plaintiffs name the WCSO and Sheriff Owen as defendants in both complaints, sue the WCSO in its official capacity, and sue Sheriff Owen in his individual and official capacity. By

asserting official-capacity claims against these defendants, plaintiffs seek to impose liability against Washington County for the alleged violations of plaintiffs' rights under the First, Fourth, Eighth, and Fourteenth Amendments.

The WCSO and Sheriff Owen move to dismiss all claims asserted against them for five reasons. They contend: (1) the WCSO is not a suable entity; (2) plaintiffs fail to state any plausible individual-capacity claims against Sheriff Owen; (3) plaintiffs fail to state any plausible official-capacity claims against Sheriff Owen; (4) plaintiffs lack standing to seek prospective injunctive relief; and (5) Sheriff Owen is entitled to qualified immunity as to any individual-capacity claims. Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 15, at 4-15.

For several reasons, the Court finds that both complaints should be dismissed as to most claims asserted against Sheriff Owen and that the WCSO should be dismissed from this action with prejudice. First, the WCSO is not a proper defendant in this action because it is a governmental sub-unit of Washington County and is not a "person" that can be sued under § 1983. The law of the state in which the district court is located determines a noncorporate entity's capacity to be sued. FED. R. CIV. P. 17(b)(3). Under Oklahoma law, a county sheriff's office is not subject to suit under § 1983 because it has no legal identity of its own. See Reid v. Hamby, No. 95-7142, 124 F.3d 217 (Table), 1997 WL 537909, at *6 (10th Cir. Sept. 2, 1997) (unpublished) (holding that "an Oklahoma 'sheriff's department' is not a proper entity for purposes of a § 1983 suit"); Hollis v. Creek Cnty. Sheriff's Off., No. 13-CV-0590-CVE-FHM, 2013 WL 6074165, at *2 (N.D. Okla. Nov. 18, 2013) (unpublished) (collecting cases and stating that the "Sheriff's Office is not a proper defendant"); Lindsey v. Thompson, 550 F. Supp. 2d 1285, 1289 (E.D. Okla. 2006) (holding that the Carter County Sheriff's Department is not a legal entity subject to suit). The Court therefore dismisses the WCSO from this action, with prejudice.

Second, plaintiffs fail to state any plausible individual-capacity claims against Sheriff Owen.  As previously stated, a defendant sued in his or her individual capacity "may be subject to personal liability and/or supervisory liability."  Brown, 662 F.3d at 1163.  Personal liability requires facts showing the defendant's "personal involvement in the alleged constitutional violation."  Id.  None of plaintiffs' factual allegations plausibly suggests that Sheriff Owen personally participated in the alleged violations of plaintiffs' constitutional rights.  In the arrest complaint, plaintiffs allege that Sheriff Owen "was aware that the incident [presumably, the plaintiffs' arrests] had been recorded and broadcasted live to Facebook," that Sheriff Owen "was aware" that plaintiffs' arrests and the subsequent search of their vehicle "were illegal" and that excessive force was used against plaintiffs, and that Sheriff Owen ignored plaintiffs' complaints about the arrest.  Hayes et al. v. Owen et al., No. 22-CV-0231-CVE-SH, Dkt. # 1, at 11.  These allegations, and the reasonable inferences drawn from them, show, at most, that Sheriff Owen knew about the plaintiffs' arrests after the fact, not that he personally participated in any violations that allegedly occurred during the arrests.  In the jail complaint, plaintiffs allege that Sheriff Owen ignored "numerous complaints," presumably, complaints about Anita's alleged mistreatment while detained at the Washington County Jail.  Hayes et al. v. Owen et al., No. 22-CV-0230-CVE-SH, Dkt. # 11, at 10.  Again, this allegation suggests no personal participation by Sheriff Owen in any of the events that allegedly occurred at the Washington County Jail.  Thus, even liberally construed, neither complaint states any plausible individual-capacity claims against Sheriff Owen under a theory of personal liability.  Plaintiffs similarly fail to state any plausible individual-capacity claims against Sheriff Owen under a theory of supervisory liability.  Under this theory, a plaintiff must allege facts "show[ing] that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained

23

of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" Brown, 662 F.3d at 1164 (quoting Dodds, 614 F.3d at 1199).  In other words, to hold supervisors individually liable for constitutional deprivations committed by their subordinates, there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . — express or otherwise — showing their authorization or approval of such misconduct.'" Dodds, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).  As just discussed, plaintiffs' allegations suggest Sheriff Owen's involvement, if any, with plaintiffs' arrests and detention occurred after the fact, not that he created a plan or policy, "express or otherwise" approving or authorizing the alleged use of excessive force by WCSO deputies and corrections officers or the corrections officers' alleged failure to provide Anita with adequate medical care.  At most, plaintiffs' allegations suggest Sheriff Owen was aware that plaintiffs were arrested and detained and that he received and did not respond to their complaints.  On the facts alleged, plaintiffs fail to state any plausible individual-capacity claims against Sheriff Owen under a theory of supervisory liability.[7]

Third, and for the reasons previously discussed, plaintiffs' factual allegations in the arrest complaint and the jail complaint do not state any plausible municipal liability claims against Sheriff Owen for alleged violations of their rights under the First and Eighth Amendments.  See supra sections IV.B and IV.C (discussing First and Eighth Amendment claims).  The Court finds, however, that it is a much closer question as to whether plaintiffs' allegations are sufficient to state any plausible municipal liability claims against Sheriff Owen for alleged violations of their rights under the Fourth and Fourteenth Amendments.  Plaintiffs' complaints both describe, in detail, the

---

[7] Because plaintiffs fail to state any plausible individual-capacity claims against Sheriff Owens, the Court does not address Sheriff Owen's argument that he is entitled to qualified immunity.

alleged misconduct of several WCSO deputies and corrections officers.  Taken as true, plaintiffs' allegations plausibly show that one or more individual defendants may have violated plaintiffs' rights under the Fourth Amendment, during plaintiffs' arrests, and may have violated Anita's rights under the Fourteenth Amendment, during plaintiffs' subsequent detention at the Washington County Jail.  But, by suing Sheriff Owen in his official capacity, plaintiffs seek to impose liability against Washington County for these alleged constitutional violations.  And Monell holds that a governmental entity is only liable under § 1983 when the constitutional injury can fairly be said to have been caused by that entity's own policies and customs.  436 U.S. at 694.  As previously discussed, Sheriff Owen is the final policymaker for the Washington County Jail and he is the county official responsible for hiring, training, and supervising WCSO deputies and corrections officers.  None of plaintiffs' allegations, in either complaint, identify any policy or custom that Sheriff Owen created, implemented, or enforced that can be fairly said to have caused plaintiffs' alleged constitutional injuries.  That said, when plaintiffs' factual allegations are considered collectively and accepted as true, the Court finds them sufficient to at least raise a reasonable inference that Sheriff Owen maintains a policy or custom, or a reasonable inference that there exists a "persistent practice," that caused multiple WCSO deputies and corrections officers at two separate locations (the site of the arrest and the jail) to engage in the alleged violations of plaintiffs' Fourth and Fourteenth Amendment rights.  Gooding, 838 F. Supp. 2d at 1238.  As this case proceeds, plaintiffs may fall short of proving Washington County is liable under a theory of municipal liability.  But, at this stage of the litigation, the Court is not convinced that plaintiffs' Fourth and Fourteenth Amendment claims should be dismissed for failure to state plausible claims against Sheriff Owen, in his official capacity.

Based on the foregoing, the Court grants in part and denies in part the motion to dismiss filed by Sheriff Owen and the WCSO.  The Court (1) dismisses the WCSO from this action, with prejudice, because it is not a proper defendant, (2) dismisses the arrest complaint and the jail complaint, in part, as to all claims asserted against Sheriff Owen in his individual capacity, and (3) dismisses the arrest complaint and the jail complaint, in part, as to the First and Eighth Amendment claims asserted against Sheriff Owen in his official capacity.

**IT IS THEREFORE ORDERED** that the motion to dismiss filed by defendant Board of County Commissioners of the County of Washington ("the Board) on August 15, 2022 (Dkt. # 14) is **granted**, and the Board is terminated as a party.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendants Washington County Sheriff Scott Owen and the Washington County Sheriff's Office ("WCSO") on August 15, 2022 (Dkt. # 15) is **granted in part and denied in part**, and the WCSO is terminated as a party.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendants Jon Copeland, Kristin Davis, Jared Cutler, Jordan Inman, Brooks Berens, Reed Blackard, Williams Jacobs, Braden Wano, Aaron Witt, and Andrew Galanis on August 15, 2022 (Dkt. # 16) is **granted in part and denied in part**, and Jon Copeland and Kristen Davis are terminated as parties.

**IT IS FURTHER ORDERED** that the motion to dismiss filed by defendant Jeff Prentice on August 22, 2022 (Dkt. # 22) is **granted**, and Jeff Prentice is terminated as a party.

**IT IS FURTHER ORDERED** that **the arrest complaint**, <u>Hayes et al. v. Owen et al.</u>, No. 22-CV-0231-CVE-SH, Dkt. # 1, is **dismissed, in part,** as to:  (1) all claims asserted against the Board; (2) all claims asserted against Lieutenant Jeff Prentice; (3) all Eighth Amendment claims asserted against all defendants; (4) all Fourteenth Amendment claims asserted against all defendants; (5) all claims asserted against Undersheriff Jon Copeland; (6) all claims asserted

26

against Sheriff Owen in his individual capacity; and (7) all First Amendment claims asserted against Sheriff Owen in his official capacity.

**IT IS FURTHER ORDERED** that **the jail complaint**, <u>Hayes et al. v. Owen et al.</u>, No. 22-CV-0230-CVE-SH, Dkt. # 1, is **dismissed, in part,** as to: (1) all claims asserted against the Board; (2) all claims asserted against Undersheriff Jon Copeland and Kristin Davis; (3) all official capacity claims asserted against Jared Cutler, Jordan Inman, Brooks Berens, Reed Blackard, Williams Jacobs, Braden Wano, Aaron Witt, and Andrew Galanis; (4) all Eighth Amendment claims asserted against all defendants; (5) all Fourth Amendment claims asserted against all defendants; (6) all Fourteenth Amendment claims alleging violations of Salinda Hayes's rights to be free from the use of excessive force or to be provided adequate medical care asserted against all defendants; and (7) all claims asserted against Sheriff Owen in his individual capacity.

**IT IS FURTHER ORDERED** that plaintiffs **may proceed** on the following claims, as alleged in the **arrest complaint**, against the following defendants: (1) plaintiffs' Fourth Amendment excessive force claims against (a) Sheriff Owen, in his official capacity, (b) Deputy Summer Davis, in her individual capacity, and (c) Deputy Patrick Ballard, in his individual capacity; (2) plaintiffs' First Amendment claims against (a) Deputy Summer Davis, in her individual capacity, and (b) Deputy Patrick Ballard, in his individual capacity.

**IT IS FURTHER ORDERED** that plaintiffs **may proceed** on the following claims, as alleged in the **jail complaint**, against the following defendants: (1) Anita Hayes's Fourteenth Amendment deliberate indifference claim (inadequate medical care) against (a) Sheriff Owen, in his official capacity, and (b) Michael Kitchens, B. Underwood, Jared Cutler, Jordan Inman, Brooks Berens, Reed Blackard, Williams Jacobs, Braden Wano, Aaron Witt, and Andrew Galanis, in their individual capacities; and (2) Anita Hayes's Fourteenth Amendment due process claim (excessive

force) against (a) Sheriff Owen, in his official capacity, and (b) Michael Kitchens, B. Underwood, Jared Cutler, Jordan Inman, Brooks Berens, Reed Blackard, Williams Jacobs, Braden Wano, Aaron Witt, and Andrew Galanis, in their individual capacities.

   **IT IS FURTHER ORDERED** that the stay of discovery (Dkt. # 45) in this case is hereby **lifted** and that a new scheduling order shall be entered forthwith.

   **DATED** this 30th day of March, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

28