IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANITA JEAN HAYES, SALINDA EVE HAYES, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>SCOTT OWEN, et al.,<br><br>  Defendants. | Case No. 22-cv-00230-CVE-SH<br>Base File |

## OPINION AND ORDER

Before the Court are the motions of Plaintiffs Anita Jean Hayes ("Anita") and Salinda Eve Hayes ("Salinda"), each seeking court appointment of an expert witness. Plaintiffs appear to be asking for publicly paid experts to support their individual claims, which is not the purpose of the rule cited, Fed. R. Evid. 706.[1] In any event, the undersigned finds that Plaintiffs' claims are not sufficiently complicated for the Court to require its own, appointed experts. Plaintiffs' motions will, therefore, be denied.

## Background

These consolidated cases arise out of the arrest and detention of Anita and Salinda in January 2021. (*See, e.g.*, ECF No. 1, Case No. 22-cv-231; ECF No. 1.[2]) Currently, the following claims remain in the case:

---

[1] While the authority for Plaintiffs' motions is found in the Federal Rules of Evidence, a decision as to the appointment of an expert witness is generally a pretrial ruling. 29 Fed. Prac. & Proc. Evid. § 6305 (2d ed.) ("Where at all possible, the decision to appoint an expert under Rule 706 should be made before trial."). The undersigned, therefore, finds this to be a non-dispositive pretrial matter that can be referred to a magistrate judge for decision, rather than one requiring a report and recommendation. *See* Fed. R. Civ. P. 72(a).

[2] Unless otherwise noted, ECF references refer to the base file (22-cv-230).

<u>As it relates to the arrest, for both Plaintiffs:</u>

(1) Fourth Amendment excessive force claims against Defendant Sheriff Scott Owen ("Owen"), in his official capacity, as well as Deputy Summer Davis ("Davis") and Deputy Patrick Ballard ("Ballard"), in their individual capacities; and

(2) First Amendment claims against Davis and Ballard in their individual capacities.

<u>As it relates to the detention, for Anita only:</u>

(1) Fourteenth Amendment deliberate indifference claims (inadequate medical care) against Owen, in his official capacity, as well as several jail employees in their individual capacities; and

(2) Fourteenth Amendment due process claims (excessive force) against Owen, in his official capacity, and the jail defendants individually.

(ECF No. 55 at 27-28.)

Plaintiffs allege that Deputies Davis and Ballard engaged in various physical behaviors that caused them harm during their arrest, including: Davis punching and kicking Salinda and wrenching her thumbs; Ballard tackling Salinda, tasing her, and forcing his knee into her back so that she couldn't breathe; Davis punching and tasing Anita, jumping on her back, wrenching her thumbs, and twisting her wrist; and Ballard wrenching Anita's arm.[3]  (ECF No. 1, Case No. 22-cv-231, at 8-10.)  Plaintiffs also allege that they refused to provide their identification to Ballard; that Salinda was recording the interaction with her phone; and that Davis stomped on Salinda's cell phone and

---

[3] Because Anita and Salinda are proceeding *pro se*, the Court liberally construes their filings, including the complaints and the pending motions. *Erickson v. Pardus,* 551 U.S. 89, 94, (2007).  This does not, however, relieve them of their burden to show that they are entitled to the relief requested.  *Cf. Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) (noting *pro se* plaintiffs must meet same standards as represented litigants to obtain requested relief and avoid dismissal).

attempted to grab Anita's cell phone.[4] (*Id.* at 8-9.) During their detention at the county jail, Plaintiffs allege that additional force was used against Anita, including when various officers kneeled on her back, stood on her ankles and wrists, and bent her pinky finger. (ECF No. 1 at 9-10.) Plaintiffs then allege that the jail staff denied Anita needed medical attention, and, after her release, she was "immediately taken to the Emergency Room and her injuries diagnosed and documented."[5] (*Id.*) As a result of the arrest, relevant to these motions, Plaintiffs allege the following injuries and damages:

> <u>Anita</u>: Post Traumatic stress disorder, [Aggravated] Anxiety with Agoraphobia, ruptured and bulging discs in back, nerve damage in thumbs, hands, back, and leg, bruises, lacerations on arms and legs, permanent bruising on ankle, taser burn[.] Wheelchair bound due to injuries[.]
>
> <u>Salinda</u>: Post Traumatic Stress, Anxiety, Nerve Damage in Thumbs, Hyperextended Knee, Busted Tooth (had to be removed)[,] Busted Lip, Bruised Ribs & Lung, Swollen Face, Bruises & Lacerations to Knees & Elbows[.]
>
> . . .
>
> Seeking compensatory and punitive damages in the amount of $90,000,000 for the recovery of Medical bills, lost income, Damage to property, Damage to Reputations, Humiliation, [Psychological] injuries, physical injuries, continued and ongoing medical and mental health care for the family for life. $16,241.91 out of pocket to date.

(ECF No. 1, No. 22-cv-231, at 12.) As it relates to the events at the jail, Anita asserts the following injuries and damages:

> Anita: Post Traumatic Stress, [Aggravated] Anxiety with agoraphobia, ruptured and bulging discs in back, nerve damage in pinky finger, wrists,

---

[4] District Judge Claire V. Eagan has stated that, "[g]enerously reading the arrest complaint, . . . plaintiffs may be asserting that Deputy Davis or Deputy Ballard violated their rights to free speech by asking them to identify themselves or by arresting them in retaliation for recording their interactions with the deputies, or that Deputy Davis violated their rights to free speech when she told plaintiffs to shut up or when she took plaintiffs' phones and ended Salinda's Facebook livestream." (ECF No. 55 at 15.)

[5] Additional detail regarding the facts pled can be found in Judge Eagan's *Opinion and Order* on Defendants' motions to dismiss. (ECF No. 55).

> ankle, back, and leg, bruising and lacerations on arms and legs, permanent bruising on ankle, suspected deep vein thrombosis in leg, wheelchair bound due to injuries.
>
> . . .
>
> Plaintiffs seeking compensatory and punitive damages in the amount of $21,000,000 for medical expenses, lost income, damage to reputations, Humiliation, [Psychological] injuries, physical injuries, continued and ongoing medical and mental health care for the plaintiffs for life. $14,241.92 in out of pocket to date.

(ECF No. 1 at 11.)

Anita and Salinda now ask the Court to appoint two different types of expert witnesses. First, Anita asks for the appointment of Reagan Gill, D.O., as an expert in forensic psychiatry, particularly for the purpose of opining as to Anita's "diagnosis and[/]or legitimacy of agoraphobia which is included as part of the damages the Plaintiffs are seeking as an issue of fact in this lawsuit." (ECF No. 89 at 2.) Anita asserts that, otherwise, she will be deprived of due process of law where there is "the defense indication of calling into question [her] diagnosis and[/]or the legitimacy of agoraphobia . . . ." (*Id.* at 3.) Second, Salinda asks the Court to appoint "any Criminologist of this Court's choosing, who has conducted research and studies in the field" regarding "failure to supervise/failure to train and excessive force . . . ." (ECF No. 90 at 2.) Salinda asserts this is necessary based on "the defense indication of calling into question the failure to supervise/failure to train and excessive use of force detailed in the Plaintiff's Complaint . . . ."[6] (*Id.* at 2-3.) Both Anita and Salinda ask that these experts be paid "at public expense." (ECF No. 89 at 2; ECF No. 90 at 2.)

---

[6] Plaintiffs additionally argue that court appointment of their requested experts is necessary because they are indigent and cannot afford to pay for the experts on their own, and because "there is a reasonable likelihood that the expert[s] will be material in" their case. (ECF No. 89 at 3; ECF No. 90 at 2-3.)

4

In response, Defendant Owen asserts that an expert opinion as to Anita's diagnosis is unnecessary—as this can be proven through non-retained witnesses, like Anita's doctor—and irrelevant, given the claims in the case. (ECF No. 96 at 3.) Owen further asserts that issues raised by Salinda are not so complex as to require an expert. (*Id.*) Owen notes that the appointment of experts under Rule 706 is exceedingly rare and limited to truly extraordinary cases. (*Id.* at 2-3.)

## Analysis - Rule 706 and the Appointment of Experts

Rule 706 provides that a "court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations." Fed. R. Evid. 706(a). If appointed, such expert must advise the parties of any findings and may be deposed, called to testify, or cross-examined by any party. *Id.* 706(b). In civil cases like this one, there is no public fund to pay for the expert; instead, the expert is paid "by the parties in the proportion" directed by the Court.[7] *Id.* 706(c). Rule 706 was added to the federal rules in 1972 with the hope that the possibility of a court-appointed expert might "exert a sobering effect" on parties and their retained expert witness(es). *Id.* adv. ctte.'s note, 1972 prop. rules. An "appointed expert's role is to assist the court, not the parties." *McCleland*, 2021 WL 4469947, at *4. As such, appointment is not an appropriate method "to fill in the gaps for a party who cannot find or afford an expert." *Id.* at *5.

The decision whether to appoint an expert witness is within the discretion of the district court. *Rachel v. Troutt,* 820 F.3d 390, 397 (10th Cir. 2016). "Rule 706 powers

---

[7] The Court, itself, may not pay an *in forma pauperis* plaintiff's witness fees. *McCleland v. Raemisch,* No. 20-1390, 2021 WL 4469947, at *4 (10th Cir. Sept. 30, 2021), *cert. denied,* 212 L. Ed. 2d 33 (2022). Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

are properly invoked where the issues are complex and the parties' experts have presented conflicting testimony that is difficult to reconcile or have otherwise failed to provide a sufficient basis for deciding the issues." 29 Fed. Prac. & Proc. Evid. § 6302 (2d ed.) (footnotes omitted). However, appointment may be denied where the "underlying claim is not sufficiently complicated to require an independent . . . expert." *Rachel*, 820 F.3d at 398.

Choosing to appoint an expert is not an issue to be taken lightly. In addition to the costs imposed on the parties,[8] there is a risk the appointment may interfere with the adversary nature of litigation. "[W]hile accurate factfinding sometimes may be promoted by judicial appointment of expert witnesses . . . [t]he opinion of a court's expert may become decisive because the expert wears the mantle of judicial authority and impartiality. This misleads the jury because, in fact, no expert is wholly impartial." 29 Fed. Prac. & Proc. Evid. § 6302 (2d ed.).

With these standards in mind, the Court turns to Anita's and Salinda's separate requests.

### Anita's Request for an Expert

Anita seeks an expert to opine as to the validity of her agoraphobia diagnosis. (ECF No. 89 at 2.) As a preliminary matter, it appears Anita is seeking the Court to appoint an

---

[8] Here, a cost imposed on Defendants alone. *See McCleland*, 2021 WL 4469947, at *4 (noting that in a case where the plaintiff brought his suit *in forma pauperis*, Rule 706's requirement that the parties pay the appointed expert's fees "would effectively require the district court to apportion the entire expert's fees to defendants"); *see also Rachel*, 820 F.3d at 398 (noting that in a case where the plaintiff "did not identify an independent expert and was unable to pay the district court's filing fee . . . the court could appoint an expert only by identifying one on its own and directing the defendants to bear all the costs").

expert for <u>her</u> use, and not for the Court's, which is not the purpose of Rule 706. *See McCleland*, 2021 WL 4469947, at *4-*5.

However, construing the motion liberally, the undersigned also analyzes whether it would assist the Court to appoint an expert to opine on Anita's agoraphobia diagnosis. It is unclear what purpose would be served by such an opinion. It does not appear that Anita's alleged agoraphobia played any role in her deliberate indifference claim, and there would be no need for an expert even if it had. Anita alleges only that she was suffering from various physical injuries in the jail (including a broken back), which the officers ignored. (ECF No. 1 at 10.) Moreover, as Owen notes, a deliberate indifference claim has both an objective and subjective component. *Strain v. Regalado,* 977 F.3d 984, 989 (10th Cir. 2020).

> A medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. The subjective component requires Plaintiff to establish that a medical official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference.

*Id.* at 990 (alterations, internal quotation marks, and citations omitted). Anita does not allege that anyone at the jail knew about her agoraphobia, or even that she was suffering from it when incarcerated. In these circumstances, there is no need for expert testimony on the issue of deliberate indifference (if any) to Anita's agoraphobia. *See Ledford v. Sullivan,* 105 F.3d 354, 355-56, 358-60 (7th Cir. 1997) (upholding court refusal to appoint expert witness where plaintiff claimed deliberate indifference by withholding medication), *cited with approval in Rachel,* 820 F.3d at 398.

Instead, it appears Anita's agoraphobia is a part of her anxiety, which she alleges was aggravated by the events during her arrest and at the jail. Anita can present evidence from her treating physician or therapist that she has a diagnosis of anxiety with agoraphobia. *See Neri v. Bd. of Educ. for Albuquerque Pub. Sch.*, 860 F. App'x 556, 562 (10th Cir. 2021) (finding plaintiff offered sufficient evidence of PTSD diagnosis where her therapist testified as an expert witness). Likewise, Anita herself can testify "about the physical and mental symptoms she experienced."[9] *Id.*

In the same way, it is not clear to the Court that an expert is needed to tie Anita's agoraphobia to her damages in this case. As a lay witness, Anita can testify to "those physical injuries and conditions which are susceptible to observation by an ordinary person," which can include things like loss of association with friends, damage to reputation, and other easily observable non-scientific damages. *Jensen v. W. Jordan City,* 968 F.3d 1187, 1206 (10th Cir. 2020). And, it appears a plaintiff's testimony alone may serve as evidence of emotional distress when a genuine injury is at issue. *Atchley v. Nordam Grp., Inc.,* 180 F.3d 1143, 1149-50 (10th Cir. 1999) (appearing to approve of the defendant's concession of this principle).

Anita has not explained how her agoraphobia diagnosis is particularly pertinent or why the agoraphobia-related issues cannot be covered by existing witnesses. More importantly, the undersigned cannot currently discern any need the Court might have for such expert testimony, particularly when summary judgment motions have not yet been

---

[9] Still, without additional expert testimony from a treating physician or other expert, Anita may be unable to show that her symptoms were caused by agoraphobia. *Id.* (noting lay plaintiff "is not competent to testify that [her] symptoms were caused by PTSD or to opine on the physical or mental effects of PTSD generally").

filed. *See Patton v. Loadholt,* 445 F. Supp. 3d 802, 804 (E.D. Cal. 2020) (finding appointment of expert not warranted where no dispositive motions had been filed and the court could not determine whether an expert would be required to advise the court on complex scientific, medical, or other matters). As such, in these circumstances, the Court will not commence the show-cause and nomination process outlined in Rule 706(a) as it relates to Anita's request.

### Salinda's Request for an Expert

Salinda, meanwhile, requests appointment of an expert who specializes in "failure to supervise/failure to train and excessive use of force . . . ." (ECF No. 90 at 2.) Again, to the extent Salinda is asking for a court-paid expert for her own use, her request will be denied.

But again, construing the motion liberally, the Court will consider whether a court-appointed expert is appropriate on these topics. Salinda's reference to "failure to supervise/failure to train" appears to be referring to her claims against Sheriff Owen in his official capacity. To establish such liability, "a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas,* 450 F.3d 1215, 1218 (10th Cir. 2006). In limited circumstances, such a policy may be shown by a local government's decision not to train employees about their legal duty to avoid violating citizens' rights. *Connick v. Thompson,* 563 U.S. 51, 61 (2011). But, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* Though a "pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train," *id.* at 62, the Supreme Court has not foreclosed the possibility that, "in a narrow range of

9

circumstances," the need to train officers can be said to be so obvious that failure to do so could properly be characterized as deliberate indifference to constitutional rights based on a single incident, *id.* at 63-64 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989)). At this stage of the litigation, the undersigned does not believe a court-appointed expert on officer training is necessary to assist the Court in resolving these issues, which may not be at all complex in this case—at least based on the allegations raised by Anita and Salinda and outlined above.

The same applies to Salinda's request for an expert on "excessive use of force." (ECF No. 90 at 2.) For Plaintiffs' excessive force claims, the Court determines whether the force purposely or knowingly used against them was objectively unreasonable. *Kingsley v. Hendrickson,* 576 U.S. 389, 396-97 (2015) (Fourteenth Amendment); *Graham v. Connor,* 490 U.S. 386, 397 (1989) (Fourth Amendment). The Court will make this determination from the perspective of a reasonable officer on the scene and may consider factors such as (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Kingsley,* 576 U.S. at 397 (noting these factors are illustrative, not exclusive). At this point in the case, these inquiries do not appear to require specialized, technical knowledge—particularly where Plaintiffs are alleging they did nothing threatening or obstructive that would in any way justify the force received.

In these circumstances, the Court will not commence the show-cause and nomination process outlined in Rule 706(a) as it relates to Salinda's request.

IT IS THEREFORE ORDERED that *Plaintiff Anita Hayes's Motion for Order Appointing Expert Witness* (ECF No. 89) is DENIED, and that *Plaintiff Salinda Hayes's Motion for Order Appointing Expert Witness* (ECF No. 90) is DENIED.

ORDERED this 17th day of July, 2023.

                                             SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
                                             UNITED STATES DISTRICT COURT