IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANITA JEAN HAYES and SALINDA EVE HAYES, | )<br>)<br>) |
| Plaintiffs, | )<br>)<br>) |
| v. | )<br>)<br>) |
| SCOTT OWEN, official capacity; MICHAEL KITCHENS, individual capacity; B. UNDERWOOD, individual capacity; J. CUTLER, individual capacity; J. INMAN, individual capacity; SUMMER SONG DAVIS, individual capacity; AND PATRICK JOSEPH BALLARD, individual capacity, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 22-cv-00230-CVE-SH<br>) Base File |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court are the motions of Plaintiffs Anita Jean Hayes ("Anita") and Salinda Eve Hayes ("Salinda"), seeking various sanctions against Defendant Sheriff Scott Owen ("Owen") for the loss of video captured by jail security cameras.[1] Salinda has no claims related to events at the jail, and her motion is denied on this basis. Anita has claims relating to the events at the jail. But, she has failed to show that Owen had sufficient notice that litigation was likely such that he had a duty to preserve the video in the four months before its automatic deletion. The Court further finds no evidence of prejudice to Anita, or any intent by Owen to deprive Anita of evidence. Both motions will be denied.

---

[1] Because Anita and Salinda are proceeding *pro se*, the Court liberally construes their filings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This does not, however, relieve Plaintiffs from their burden to show they are entitled to the relief requested. *Cf. Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (noting *pro se* plaintiffs must follow the same standards as represented litigants to obtain requested relief).

**Background**

These consolidated cases arise out of the arrest and detention of Anita and Salinda on January 17, 2021. (*See, e.g.*, ECF No. 1, Case No. 22-cv-231; ECF No. 1.[2]) Originally, Plaintiffs brought two distinctive sets of claims—one relating to their arrest at a house in Dewey, Oklahoma (ECF No. 1 at 6, Case No. 22-cv-231), and another relating to their treatment at the Washington County Jail in Bartlesville, Oklahoma (ECF No. 1 at 6). Salinda no longer has any claims relating to the jail. Salinda's only remaining claims relate to her arrest. (ECF No. 55 at 27-28.) Meanwhile, Anita has claims relating to both her arrest and her treatment at the jail, including (1) deliberate indifference (inadequate medical care) while at the jail; and (2) excessive force while at the jail. (*Id.*) More specifically, Anita claims excessive force was used against her while in jail when officers kneeled on her back, stood on her ankles and wrists, and bent her pinky finger. (ECF No. 1 at 9-10.) Anita alleges the jail staff then denied her needed medical attention. (*Id.*)

While being booked, Plaintiffs claim Salinda "point[ed] at the video cameras and state[d] 'we have all these cameras documenting.'" (*Id.*) Plaintiffs further state they "were extremely vocal about their intentions to file suit from the time of their arrests . . . ." (*Id.* at 3.) Plaintiffs do not provide any details indicating they stated an intent to sue regarding the conditions at the Washington County Jail, as opposed to their actual arrest.

Sometime on or before January 26, 2021, Anita e-mailed the City of Bartlesville about her experience with the Washington County Sheriff's Office.[3] (ECF No. 104-1.) On

---

[2] Unless otherwise noted, ECF references refer to the base file (22-cv-230).

[3] The contents of this e-mail have not been provided to the Court. Instead, the Court has the beginning of a Mike Bailey's response to Anita's e-mail. (ECF No. 104-1.) Based on the subsequent events, it appears that the e-mail related only to Plaintiffs' treatment during their arrest in Dewey by Deputies Summer Davis and Patrick Ballard. (ECF No. 92 at 9, ECF No. 94 at 9.)

that date, Owen noted the "matter is under review by a use of force committee, as well as all evidence being forwarded to the D.A.'s office." (*Id.*; *see also* ECF No. 92 at 8; ECF No. 94 at 8.) The use of force review was completed on January 22, 2021, but it related only to the incident in Dewey—that is, Plaintiffs' arrest.[4] (ECF No. 92 at 9; ECF No. 94 at 9.)

Then, on May 27, 2021, Anita and Salinda each submitted requests under the Open Records Act to the Oklahoma Office of the Attorney General.[5] (ECF No. 104-3.) This appears to be the first time Anita or Salinda indicated they were looking for evidence of what happened at the jail in Bartlesville (in addition to the arrest in Dewey). Salinda sought the "911 call, Body cams for Deputies Summer Davis and Patrick Ballard, video footage of Booking during entire stay, jail duty roster." (*Id.* at 1.) Anita similarly asked for the "911 call, Body cams of Deputies Summer Davis and Patrick Ballard[,] entire Arrests of Anita & Salinda Hayes, videos of booking area[,] 2nd holding cell of Anita Hayes." (*Id.* at 2.) According to Owen, because this request was more than four months after the January arrest, by that point any jail video had been overwritten and was gone. (ECF No. 104-6.)

---

[4] It is not clear why Owen was stating, on January 26, 2021, that the matter raised by Anita was "under review by a use of force committee" (ECF No. 104-1), when the ultimate report from the Non-Deadly Use of Force Review indicated the board completed its review on January 22, 2021 (e.g., ECF No. 92 at 9). The only inference the Court can draw from the limited information provided by the parties is that Owen was not yet aware of the results of the review on the 26th.

[5] It appears the requests were received by the Washington County Sheriff's Office by sometime in June. (ECF No. 104-5.) Plaintiffs also claim that they each submitted a "VICTIM IMPACT STATEMENT" in May 2021. (ECF No. 92 at 3; ECF No. 94 at 3.) Plaintiffs do not provide a copy of these statements, so the Court does not know the date on which they were provided. It appears, however, it was at the same time as the open records requests. (*Id.* ("In May of 2021 both plaintiffs returned . . . 'VICTIM IMPACT STATEMENT' forms . . ., detailing the same events as listed in this lawsuit as well as written requests for all videos relating to this case via Oklahoma Open Records Act . . . .").)

On December 16, 2021, Anita sent a Notice of Tort Claim, asserting excessive force was used against her by Washington County Sheriff deputies and jail staff. (ECF No. 104-7 at 11-12.) This appears to be the first time that Anita indicated she had any potential claims relating to her treatment at the jail.

On April 20, 2022, the Sheriff's Office responded to Anita's open records request, providing personnel files and a list of persons on duty at the detention center on January 17, 2021. (ECF Nos. 92 at 11, 94 at 11, & 104-10.) The letter noted that a DVD had already been provided with certain items on it, but stated any video footage of the booking process or the time the Hayes's were at the jail was exempt from an open records request. (*Id.*) The letter did not mention that the jail video was no longer available.

The current lawsuit was filed on May 25, 2022. (*E.g.,* ECF No. 1.) It is not clear whether Anita and Salinda have issued document requests to which the jail videos would have been responsive—but Owen notes that he "produced body camera footage of the arrest and within the jail," e-mail, and other documents responsive to Plaintiffs' discovery requests. (ECF No. 104 at 3.) Plaintiffs state they recently discovered from the production that the jail videos were not "tagged" and were, therefore, allowed to be overwritten. (ECF No. 92 at 2; ECF No. 94 at 2.) As a result, Plaintiffs have moved for default judgment and sanctions against Owen. (ECF Nos. 92, 94.)

**Analysis**

I. **Standard of Review**

Spoliation, generally, "includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *United States v. Koch Indus., Inc.*, 197 F.R.D. 463, 482 (N.D. Okla. 1998). As videos

4

constitute electronically stored information ("ESI"),[6] the Court looks to Rule 37(e) to determine whether and which remedy is appropriate. *See* Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e).[7] Under the rule,

> If electronically stored information that should have been preserved in the anticipation . . . of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>     (A) presume that the lost information was unfavorable to the party;
>
>     (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>     (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Plaintiffs—as the parties seeking sanctions—bear the burden of demonstrating that the requirements of Rule 37(e) are met. *Bush v. Bowling,* No. 19-CV-00098-GKF-FHM, 2020 WL 5423986, at *2 (N.D. Okla. Sept. 10, 2020). The judge, however, has discretion on how best to assess prejudice in a particular case; the rule does

---

[6] ESI was added to the federal discovery rules in 2006, and—at its most basic—refers to "information that is stored in a medium form," as opposed to being fixed on paper. Fed. R. Civ. P. 34, advisory ctte.'s note, 2006 am., subdiv. (a) ("Rule 34(a)(1) is expansive and includes any type of information that is stored electronically. . . . References elsewhere in the rules to 'electronically stored information' should be understood to invoke this expansive approach.").

[7] Rule 37(e), as amended in 2015, "authorizes and specifies measures a court may employ if information that should have been preserved is lost, and specifies the findings necessary to justify these measures. It therefore forecloses reliance on inherent authority or state law to determine when certain measures should be used." *Id.*

not place the burden of proving or disproving prejudice on a one party or the other. Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e)(1).

## II. Salinda

As a preliminary matter, Salinda has provided no basis from which the Court could find that the jail video is relevant to her claims and, therefore, discoverable. *See* Fed. R. Civ. P. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is <u>relevant</u> to any party's claim or defense . . . ."). As noted above, Salinda's only remaining claims relate to events surrounding her arrest in Dewey—which were complete before she made it to the jail in Bartlesville. If the information would not be relevant to an issue at trial, "the court's analysis stops there." *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007). Salinda's motion will be denied.

## III. Anita

Anita has claims relating to her treatment at the jail, and the parties do not dispute that the lost video would be relevant to her claims. The Court, therefore, will consider whether Anita has shown that spoliation sanctions are appropriate under the rule.

### A. Duty to Preserve Evidence.

First, the Court must consider whether Owen had a duty to preserve evidence and, if so, the scope of that duty. Rule 37(e) only applies when information is lost after "a duty to preserve arises." Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e). The rule does not create a new duty to preserve; instead, it looks to the common-law duty "to preserve relevant information when litigation is reasonably foreseeable." *Id*.

When making this decision, the Court considers "the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Id*. "While a party should not be permitted to destroy potential evidence after receiving

6

unequivocal notice of impending litigation, the duty to preserve relevant documents should require more than a mere possibility of litigation." *Cache La Poudre*, 244 F.R.D. at 621. As noted above, before May 27, 2021, there was no indication that Anita was interested in any information about what happened at the jail, and before December 16, 2021, there was no notice that Anita believed she had a claim against anyone for what happened at the jail. (*Supra* at 4.)

Some courts have found a duty to preserve even when a party has not yet given notice of an intent to sue. This has occurred in situations where "a party has knowledge that certain types of incidents tend to trigger litigation," and certain courts "have found the duty to preserve relevant video footage may attach as soon as the triggering incident occurs and prior to when a claim is filed." *Taylor v. New York*, 293 F.R.D. 601, 610 (S.D.N.Y. 2013). However, in those cases, it is clear that the non-preserving party knew a triggering event had occurred. *See, e.g., id.* at 605-08 (jail officials knew plaintiff had been assaulted by another inmate—taking him straight from the holding cell to the emergency room; jail staff reviewed the footage of the assault and subsequent events and stated that all three hours of the footage was important to see; and the staff saved only some of the footage); *Quraishi v. Port Auth.*, No. 13 CIV. 2706 NRB, 2015 WL 3815011, at *2 (S.D.N.Y. June 18, 2015) (defendant employee saw the injured plaintiff and "called a 'red alpha' to receive emergency assistance" and another defendant employee reviewed the video footage shortly after the incident to prepare a timeline).

Here, however, there is no evidence showing Owen (or his employees) had such strong knowledge that a litigation-triggering event occurred. Certainly, Anita <u>alleges</u> that she was injured at the jail, that she complained that her rights were being violated, and

7

that she said needed medical attention.[8] However, there is no independent evidence that Owen or the deputies knew that Anita was, in fact, injured. Instead, Anita's allegations indicate that the deputies moved Anita around on the "party wagon" after she failed to comply with their instructions to leave the cell. (*See* n.8, *supra*.) And, while Plaintiffs allege that "[u]pon her release, Anita [was] immediately taken to the Emergency Room and her injuries diagnosed and documented," (ECF No. 1 at 10), this appears to be actions Plaintiffs took on their own. There is no evidence that Owen knew this had occurred. The Court finds Owen had no duty to preserve any jail footage as of the date of the incident on January 17, 2021. As there is no evidence that Owen was aware Anita was even interested in the jail footage (much less intended to pursue a claim relating to the jail) in the four months before the footage was overwritten, Owen had no duty to preserve the lost information. Anita's motion fails on this basis alone.

### B. Prejudice

Even if Owen had a duty to preserve the jail video, prejudice has not been shown under Rule 37(e)(1). As noted above, the rule leaves the judge with discretion on "how best to assess prejudice in particular cases." Fed. R. Civ. P. 37, advisory ctte.'s note, 2015 am., subdiv. (e)(1). This is because, in some situations, "placing the burden of proving

---

[8] The Complaint alleges: "Anita tells corrections officers that they are breaking her finger and her back, she can't breathe with all of their weight on her, and they are killing her. . . . Salinda . . . can hear Anita saying that she needs medical attention and that they are killing her . . . . Anita requested medical attention and a facemask throughout which was denied. . . . Anita continues to tell the officers that they hurt her and needs medical attention and they have violated her rights. The officers ordered Anita to come out of the cell and she explained that she couldn't because they had broken her back. Officers finally brought what they described as a 'party wagon' to remove Anita from the cell. Corrections officers forced Anita's injured hands and wrists to fingerprint her. Officers wheel Anita back to the cell in the party wagon. . . . Anita repeatedly tells officers and anyone within proximity that her rights are being violated. Anita continues to ask for medical attention and a mask. . . . Anita is wheeled out to the main booking area. Anita is wheeled out of the jail in the party wagon and into the passenger side of her car." (ECF No. 1 at 9-10.)

8

prejudice on the party that did not lose the information may be unfair," while in other instances, "the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties." *Id.*

Here, both parties agree that the bodycam footage from inside the jail has been preserved. (*See, e.g.,* ECF No. 94 at 2[9]; ECF No. 104 at 3 & 11[10].) While Anita generally complains about the quality and length of this footage—something Owen disputes (*see id.*)—she is the person best suited to explain why she believes that the jail surveillance video would provide relevant information that is different or additional to what is on the body camera video. In these circumstances, the Court finds it appropriate to place the burden on Anita to explain how she is prejudiced by the lack of video. Based on the current record before the Court, this has not been done. Had the Court found a duty to preserve, it would have considered asking the parties to provide additional submissions on this issue. However, given the lack of any duty, such submissions would be futile at this point.

### C.     Intent to Deprive

The Court also finds Anita has failed to show that Owen acted with an intent to deprive her of the ability to use the jail footage in this litigation—a showing that is

---

[9] "Plaintiffs had made it very clear in a body camera video of their booking processes after their arrests, also produced by defendants in discovery . . . . Further, the body camera footage that Defendant Sheriff did produce to Plaintiffs are as short as one minute and with the thirty seconds of sound not recorded by the body cameras, as short as thirty sections of viable footage and have obviously been altered." *Id.*

[10] "Defendant produced body camera footage of the arrest and within the jail . . . . Defendant has provided body camera footage that does in fact last well over a minute and that contains audio recording. In fact, unlike general surveillance footage, body cameras begin recording audio **30 seconds after being activated**." *Id.*

9

required under Rule 37(e)(2) for the dismissal sanction Anita seeks. As noted in Section III(A), *supra*, there is no independent evidence that anyone at the jail had any reason to believe that Anita would be making a claim and no notice was provided before the video's deletion. In these circumstances, the Court cannot find that Owen acted with the requisite intent to warrant the more severe sanctions found at Rule 37(e)(2).

## Conclusion

Salinda has no remaining claims relating to events at the jail, and the video would not be relevant to prosecuting or defending against her claims. While Anita does have jail-related claims, the Court finds Owen had no duty to preserve the video before it was overwritten. Even if a duty existed, there is not currently evidence of prejudice to Anita or an ill intent by Owen.

IT IS THEREFORE ORDERED that *Plaintiff Salinda Hayes's Motion for Entry of Default Judgment and Sanctions against Defendant Sheriff Scott Owen for Spoliation of Evidence* (ECF No. 92) is DENIED and that *Plaintiff Anita Hayes's Motion for Entry of Default Judgment and Sanctions against Defendant Sheriff Scott Owen for Spoliation of Evidence* (ECF No. 94) is DENIED.

ORDERED this 11th day of December, 2023.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT