# United States District Court

## for the Northern District of Oklahoma

Case No. 22-cv-230-JDR-SH

BASE FILE

Consolidated with:
Case No. 22-cv-231
Case No. 22-cv-274
Case No. 22-cv-275

ANITA JEAN HAYES; SALINDA EVE HAYES,

*Consolidated Plaintiffs*,

*versus*

SCOTT OWEN, *in his official capacity*; MICHAEL KITCHENS;
B. UNDERWOOD; J. CUTLER; J. INMAN; SUMMER SONG DAVIS;
PATRICK JOSEPH BALLARD,

*Defendants/Consolidated Defendants*.

## OPINION AND ORDER

Plaintiffs Anita Jean Hayes and Salinda Eve Hayes were arrested on January 17, 2021, for obstruction. They allege that, during the arrest and subsequent detention, Defendants Washington County Sheriff Scott Owen, Deputy Patrick Joseph Ballard, Deputy Summer Song Davis, Officer Michael Kitchens, Officer B. Underwood, Officer J. Cutler, and Officer J. Inman violated their civil rights. The Defendants have moved for summary judgment on all claims. Dkts. 120, 122. The motions are granted.

I

The following facts are supported by evidence in the record and are construed in a light most favorable to the non-movants: On the morning of

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

January 17, 2021, Deputy Ballard was asked to accompany a tenant who believed she had been wrongfully evicted and needed help reclaiming her belongings from the house she was renting. He helped her enter through the window. While they were at the house, the tenant unknowingly dropped her phone. The tenant and Deputy Ballard then left the house.

Plaintiffs arrived at the house to assist the landlord in securing the window. Salinda was using a hatchet to nail a board over the window when the tenant returned to look for her phone. Dkts. 122 at 10 (¶ 4); 132 at 9 (¶ 4). There is no record of what transpired between Plaintiffs and the tenant, but Deputy Ballard received a call from dispatch asking him to return to the home because "they're out in her driveway, threatening [the tenant] with an axe." Dkts. 122 at 10 (¶ 3); 132 at 9 (¶ 3).

When Deputy Ballard returned, Plaintiffs' car was parked in front of the house. Anita was sitting in the passenger seat while Salinda was standing inside the open passenger door. As Deputy Ballard approached the vehicle from behind, he asked "what's going on?" Salinda responded "I've got these people here," and then asked Deputy Ballard to back up because he was not wearing a mask.[1] Deputy Ballard then asked, "Where's the axe?" Salinda stated "There ain't no axe."[2] Dkts. 122 at 10 (¶ 6); 132 at 9 (¶6). Deputy Ballard responded "Well, I was told there was an axe. So for my safety …." Salinda interrupted Deputy Ballard and said "these people are full of shit. There's no axe." When Salinda later told Deputy Ballard the tenant was trespassing on private property, the tone of the conversation became confrontational and the two began arguing about whether the road was a private road

---

[1] Presumably this request was related to the social distancing practiced during the COVID-19 pandemic.

[2] A hatchet was later found under the front passenger seat of plaintiffs' car at the scene. Dkts. 122 at 10 (¶ 5); 132 at 9 (¶ 5). Salinda maintains that an axe is different from a hatchet, which is why she told Deputy Ballard that there was not an axe at the scene.

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

and whether the tenant was, in fact, trespassing. Dkts. 122 at 12 (¶ 9); 132 at 9 (¶ 9).

Deputy Ballard asked Plaintiffs why they were at the house. They told him they were there to help their friend, who owned the house, and were in the process of purchasing the property. After arguing with Plaintiffs about whether the tenant had been properly evicted and whether she had a right to be on the property, Deputy Ballard requested Plaintiffs' identification. Plaintiffs refused to provide any information to Deputy Ballard. Dkts. 122 at 11 (¶ 7); 132 at 9 (¶ 7). When Deputy Ballard told Salinda that she would be arrested for obstruction if she did not provide the requested information, Salinda raised her voice and responded, "I would like to see you try, my sir. Because I will tell you what, I am quite familiar with my civil rights and you're not going to violate me. There is no crime being committed here."

During this exchange, Deputy Davis arrived and asked Anita if she owned the property. Plaintiffs responded that they were in the process of purchasing it. Deputy Davis then told Plaintiffs to "shut up." Anita asked Deputy Davis if she told them to shut up and Deputy Davis responded, "yes ma'am" and signaled two thumbs up. Salinda asked Deputy Davis to back up. Deputy Davis told Plaintiffs they needed to leave and again warned them that they were going to be arrested. Salinda told Deputy Davis that the Deputies needed to leave because they were on private property. Deputy Ballard asked Deputy Davis what Plaintiffs were going to be arrested for, and she replied "obstruction." Salinda repeatedly yelled "obstruction is not a crime" while Deputy Ballard grabbed her left wrist and asked her to put her hands behind her back. Salinda refused to comply.[3] Dkts. 122 at 12 (¶ 10); 132 at 9 (¶ 10). As Deputy Ballard grabbed Salinda's arm, Salinda lost her balance, causing

---

[3] Plaintiffs maintain that they did not comply with Deputy Ballard's commands because they believed them to be unlawful. Dkts. 132 at 9 (¶ 10).

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

Deputy Davis, Salinda, and Deputy Ballard to fall to the ground.[4] Dkts. 122
at 12 (¶ 11); 132 at 10 (¶ 11). As they fell, Deputy Davis punched Salinda and
a struggle followed.

Deputy Davis told Deputy Ballard to tase Salinda because she had her
gun.[5] Salinda responded that she did not have the gun and asked Anita if she
was filming the altercation. Meanwhile, Anita recorded the altercation on her
phone from a few feet away while yelling at the Deputies.[6] During the alter-
cation, Deputy Davis's gun was unholstered but remained in Deputy Davis's
possession. She appeared to point the gun away from any individuals while
Salinda was struggling with Deputy Ballard. Deputy Ballard warned Salinda
that if she did not put her hands behind her back she was going to be tased.
Salinda continued to resist. Deputy Ballard tased Salinda twice. Afterward,
Salinda told Deputy Ballard to cuff her. While he was doing so, Salinda yelled
"I can't breathe." After she was handcuffed, Deputy Ballard walked Salinda
over to his patrol truck and placed her in the back seat.

Meanwhile, Deputy Davis walked over to Anita, took her phone, and
grabbed her right arm to arrest her. Anita resisted and stated, "No ma'am,
I've done nothing." Deputy Davis took Anita to the ground and attempted to
handcuff her. Deputy Davis asked Anita to put her hands behind her back and
warned Anita that she was going to tase her. Anita refused to comply with the
order, so Deputy Davis told her "[the taser] really hurts. Please put your
hands behind your back." But Anita continued to resist until Deputy Davis
tased her. Deputy Davis was then able to place Anita in handcuffs. When
Anita refused to stand up and walk to Deputy Davis's patrol car, Deputy

---

[4] Deputy Davis was lying on the ground facing up, Salinda was lying on top of Dep-
uty Davis facing down, and Deputy Ballard was lying on top of Salinda facing down.

[5] Deputy Davis believed that Salinda was trying to unholster her gun during the
altercation, so she took it out to maintain possession of it.

[6] The footage from Anita's phone is found at Dkt. 138, videos 2, 4, & 6. The video
of Deputy Davis's body camera footage is found at Dkt. 138, video 12.

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

Davis, Deputy Ballard, and another officer carried her over to the patrol car and placed her in the back seat. Anita claims that Deputy Davis intentionally caused her discomfort by turning the heat on high and playing loud music while she drove to the Washington County Jail.

When they arrived at the jail, Salinda cooperated and left the patrol truck without resisting.[7] Anita, however, did not cooperate. When the Jail Officers asked her to get out, she told them to step back because none of them were wearing masks. She gave the same response to their second request. One of the officers reached into the back of Deputy Davis's patrol car, grabbed Anita by the arms, and pulled her out of the car. Anita told the Jail Officers they were hurting her shoulder. They asked her to stand up and walk, which she refused to do. Anita again told the Jail Officers they were hurting her shoulder and that she would not help them "kidnap" her. Eventually, three Jail Officers and Deputy Ballard carried Anita into the jail and laid her face down in the holding cell.

While on the ground, Anita told the Jail Officers "You're fucking my shit up, guys." The Jail Officers checked her pockets. At one point, Anita stated that they were hurting her arm, which she was "pretty sure they already dislocated." As the Jail Officers began to remove her wedding ring, she told them "I don't think so, guys." One of the officers attempted to force the ring off and Anita told them that they would break it, to which he replied, "I one hundred percent will." Anita stated "You're not taking that fucking ring. That's my wedding ring." Anita continued to resist the removal of the ring while one of the officers applied pressure on her hip. The officer eventually forced the ring off. Anita was released a few hours later. Salinda was released the next day.

---

[7] The recitation of the events from the Washington County Jail are taken from one of the Jail Officer's body camera footage. Dkt. 122-12.

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

## II

Plaintiffs began this litigation by filing two separate cases in this Court: one alleging violations of the First, Fourth, Eighth, and Fourteenth Amendments during the arrests, and one alleging violations of the Fourth, Eighth, and Fourteenth Amendments during their subsequent detention at the Washington County Jail.[8] Plaintiffs then filed two nearly identical cases in the Washington County District Court. Defendants removed the two Washington County cases to this Court, and all four proceedings were consolidated. Dkt. 11.

An earlier order addressing four motions to dismiss determined the claims that Plaintiffs had sufficiently alleged: (1) Anita and Salinda's First Amendment claims against Deputy Davis and Deputy Ballard in their individual capacities; (2) Anita and Salinda's Fourth Amendment excessive force claims against Sheriff Owen in his official capacity and Deputy Davis and Deputy Ballard in their individual capacities; (3) Anita's Fourteenth Amendment deliberate indifference claim (inadequate medical care) against Sheriff Owen, in his official capacity, and the Jail Officers, in their individual capacities; and (4) Anita's Fourteenth Amendment due process claim (excessive force) against Sheriff Owen, in his official capacity, and the Jail Officers, in their official capacities.[9] Dkt. 55 at 27-28.

All Defendants have moved for summary judgment on Plaintiffs' remaining claims. Dkts. 120, 122. Sheriff Owen argues he cannot be held liable for any alleged constitutional violations in his official capacity because Plaintiffs have failed to identify a Washington County Sheriff's Office policy,

---

[8] Under 42 U.S.C. § 1983, individuals can sue government officials who violate their constitutional rights while acting under color of law. There is no dispute that the Defendants were acting under the color of law when arresting and detaining the Plaintiffs.

[9] The Court dismissed Salinda's claims pertaining to her detention at the jail, Plaintiffs' Eighth and Fourteenth Amendment claims pertaining to their arrest, and Plaintiffs' Fourth and Eighth Amendment claims pertaining to their detention. Dkt. 55 at 15, 18.

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

custom, or persistent practice that caused their injuries, as required by *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Dkt. 120 at 9-13. The Deputies and Jail Officers argue they are entitled to summary judgment because: (1) Plaintiffs' Fourth Amendment claims are barred by the *Rooker-Feldman* doctrine and the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) Plaintiffs' Fourth and Fourteenth Amendment claims fail because the Deputies and Jail Officers used only minimal force that was reasonable given Plaintiffs' resistance; and (3) the Deputies and Jail Officers are entitled to qualified immunity on all claims. Dkt. 122 at 18-28. The motions have been fully briefed and are ripe for review.[10]

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must "'view the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party.'" *Cronick v. Pryor*, 99 F.4th 1262, 1267 (10th Cir. 2024) (quoting *Simpson v. Little*, 16 F.4th 1353, 1360 (10th Cir. 2021)). "If the movant carries the burden of demonstrating an absence of a dispute as to material fact, 'the nonmovant must then go beyond the pleadings and set forth specific facts that would be admissible in evidence and that show a genuine issue for trial.'" *Davis v. GEO Grp. Corr., Inc.*, No. CIV-16-462-PRW, 2023 WL 2861425, at *2 (W.D. Okla. Jan. 12, 2023) (quoting *Martin v. City of Okla.*

---

[10] After they responded to Defendants' motions for summary judgment, Plaintiffs moved to defer consideration of the motions to allow time for additional limited discovery under Fed. R. Civ. P. 56(d). Dkt. 133. Magistrate Judge Susan E. Huntsman denied the motion because it failed to explain why Plaintiffs couldn't establish a genuine issue for trial. Dkt. 150.

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

*City*, 180 F. Supp. 3d 978, 983 (W.D. Okla. 2016)). To satisfy this obligation, Plaintiffs cannot rest on mere arguments or allegations; instead, they must identify the facts that create a genuine dispute by referring to affidavits, depositions, or specific exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

## III

The Court begins with Plaintiffs' First Amendment claims. Construed generously, Plaintiffs alleged "that Deputy Davis or Deputy Ballard violated their rights to free speech by asking them to identify themselves or by arresting them in retaliation for recording their interactions with the deputies," and "that Deputy Davis violated their rights to free speech when she told plaintiffs to shut up or when she took plaintiffs' phones and ended Salinda's Facebook livestream." Dkt. 55 at 15. Defendants argue that they are entitled to qualified immunity because Plaintiffs have failed to show that they violated a clearly established constitutional right. Dkt. 122 at 24-28. Plaintiffs never specifically address their First Amendment claims in their response to Defendants' motions. Instead, their briefing is limited to their allegations regarding the Fourth, Eighth,[11] and Fourteenth Amendments. Dkt. 132 at 6, 25. The Court concludes that Plaintiffs abandoned their First Amendment claims and grants Defendants' motions for summary judgment. *See, e.g., McCants v. Correct Care Sols., LLC*, No. 16-2787-DDC, 2018 WL 2445157, at *5 (D. Kan. May 31, 2018) ("[W]hen a party fails to respond to arguments made to support a motion for summary judgment, the party, in effect, abandons that claim." (collecting cases)).

## IV

The Court turns next to Plaintiffs' Fourth Amendment claims against Deputy Ballard and Deputy Davis, which stem from the Deputies' actions

---

[11] As discussed above and per the Court's previous order [Dkt. 55], Plaintiffs do not have a viable Eighth Amendment claim based on the facts of their case.

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

during the arrest.[12] The Deputies argue that Plaintiffs' Fourth Amendment claims for unreasonable search, false arrest, and excessive force are barred by the *Rooker-Feldman* doctrine or estopped based on the ruling in *Heck v. Humphrey*, 512 U.S. 477 (1994). They argue that, because Plaintiffs were ultimately convicted of obstruction,[13] granting Plaintiffs' requested relief "would necessarily imply the invalidity of either conviction in the underlying state criminal cases." Dtk. 140 at 9. *See* Dkt. 122 at 18-20. The Court disagrees.

Neither the *Rooker-Feldman* doctrine nor *Heck* have any bearing on Plaintiffs' excessive force and unreasonable search claims. The facts giving rise to those claims took place after Deputy Ballard and Deputy Davis told Plaintiffs they were being arrested for obstruction. Any ruling on those two claims would not "necessarily imply the invalidity" of Plaintiffs' obstruction convictions. *Heck*, 512 U.S. at 487. Thus, the Court will first consider whether the false arrest claim is barred by *Rooker-Feldman* or *Heck* and then turn to the merits of each claim.

A

The *Rooker-Feldman* doctrine does not bar Plaintiffs' false arrest claims. The doctrine seeks to prevent federal district courts "from effectively exercising appellate jurisdiction over claims actually decided by a state court and claims inextricably intertwined with a prior state-court judgment." *Mo's Express, LLC v. Spokin*, 441 F.3d 1229, 1233 (10th Cir. 2006) (quotation marks and citation omitted). It applies in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and

---

[12] The parties' briefing makes no distinction between the analysis to be used for the claims brought under the Oklahoma Constitution or the Federal Constitution. Accordingly, the Court will analyze the claims together.

[13] Salinda was convicted at trial and Anita entered a plea of nolo contendere. A nolo contendere plea "has the same legal effect as a guilty plea …." *Morgan v. State*, 744 P.2d 1280, 1281 (Okla. Crim. App. 1987) (citation omitted).

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It does not, however, "deprive a federal court of jurisdiction to hear a claim just because it could result in a judgment inconsistent with a state-court judgment." *Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1174 (10th Cir. 2018). Plaintiffs are not inviting review of their state court convictions; in fact, they do not challenge their convictions at all. Instead, they are challenging "the manner and method by which they were arrested." Dkt. 132 at 21. The constitutional injury alleged by Plaintiffs is separate and apart from the state court judgments, and the *Rooker-Feldman* doctrine does not apply.

B

The holding in *Heck*, however, is applicable to Plaintiffs' false arrest claims. In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence …." 512 at 487. "In other words, a civil claim is barred if it seeks to retry the same facts and legal issues from a prior case where the civil plaintiff has already been convicted beyond a reasonable doubt as a criminal defendant." *St. George v. City of Lakewood*, No. 22-1333, 2024 WL 3687780, at *3 (10th Cir. Aug. 7, 2024). The Supreme Court has clarified that "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Heck*, 512 at 487 (footnotes omitted). For Plaintiffs' false arrest claims, they must show that the Deputies arrested them without probable cause. *See Loftis v. Conway*, No. 24-cv-136-RAW-JAR, 2025 WL 675439, at *3 (E.D. Okla. Mar. 3, 2025) (citation omitted). Thus, resolution of Plaintiffs' false arrest claims may call into question the validity of the subsequent convictions. But even if *Heck* applies, the Court finds that their arrests for obstruction were nevertheless supported by probable cause.

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

C

Turning next to the merits of Plaintiffs' false arrest claims, the Fourth Amendment protects "[t]he right of the people to be secure … against unreasonable searches and seizures …." U.S. Const. amend. IV. An arrest "is the most intrusive of Fourth Amendment seizures," and is "reasonable only if supported by probable cause." *United States v. White*, 584 F.3d 935, 945 (10th Cir. 2009) (citation omitted). Any arrest "without probable cause that a crime has been committed violates the Fourth Amendment." *Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010) (citation omitted).

A police officer has probable cause to arrest an individual when he has sufficient information "to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949); *Henry v. United States*, 361 U.S. 98, 102 (1959)). Employing an objective standard, the court must consider the totality of the circumstances to determine whether a reasonable officer would have believed that there was probable cause to make an arrest. *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011). Probable cause "is measured at the moment the arrest occurs and must derive from facts and circumstances based on reasonably trustworthy information." *Cortez v. McCauley*, 478 F.3d 1108, 1121 (10th Cir. 2007) (citations omitted). "The proper inquiry in a § 1983 claim based on false arrest is not whether the person arrested actually committed an offense, but whether the arresting officer had probable cause to believe that he had." *Crawford ex. rel. Crawford v. Kansas City, Kansas*, 952 F. Supp. 1467, 1474 (D. Kan. 1997) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).

Plaintiffs were arrested and convicted of violating Okla. Stat. tit. 21, § 540, "willfully delay[ing] or obstruct[ing] any public officer in the discharge or attempt to discharge any duty of his or her office …." When Deputy Ballard received the call from dispatch, he knew that there was an underlying landlord/tenant dispute at the address. He also knew that there were people

11

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

in the driveway threatening the tenant with an axe. This info gave Deputy
Ballard "articulable grounds to initiate a police-citizen contact to verify or
dispel the caller's concerns." *United States v. Carroll*, No. CR 10-3237 LH,
2011 WL 13289809, at *4 (D.N.M. Apr. 26, 2011) (citations omitted). *See Adams v. Williams*, 407 U.S. 143, 147 (1972) (stating that reasonable and articulable suspicion of criminal activity can be based on information supplied by
another person; it need not be based solely on the officer's personal observation). Because Plaintiffs were the only individuals in the driveway when Deputy Ballard arrived, he had reason to question Plaintiffs about the alleged assault. The dispatch call in combination with Plaintiffs' presence at the house
and Deputy Ballard's knowledge of the ongoing landlord/tenant dispute, provided a sufficient basis for Deputy Ballard to investigate at the scene. At a
minimum, the Deputies had reasonable suspicion to briefly detain Plaintiffs
while they investigated a possible assault.

During the conversation that followed, Deputy Ballard had reason to
suspect that Plaintiffs were involved in or at least witnessed the alleged assault. To investigate the alleged assault, he asked Plaintiffs to either provide
identification demonstrating their right to be on the premises or leave the
scene. *See Oliver v. Woods*, 209 F.3d 1179, 1189 (10th Cir. 2000) ("When an
officer is conducting a lawful investigative detention based on reasonable suspicion of criminal activity, the officer may ask for identification and for an
explanation of the suspect's presence in the area."). Plaintiffs refused to provide identification and refused the Deputies' requests that they leave the area
so the Deputies could continue their investigation.

Plaintiffs' refusal to comply with the Deputies' lawful investigation
gave the Deputies probable cause to arrest the Plaintiffs under Okla. Stat. tit.
21, § 540. *See, e.g., Walker v. Anderson*, No. 23-cv-8-CVE-JFJ, 2024 WL
3905733, at *10-*11 (N.D. Okla. Aug. 22, 2024) (holding that officers had
probable cause to arrest defendant for obstruction where he refused to provide identification or to leave the immediate area)*; see also Tucker v. City of*

12

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

*Oklahoma City*, No. CIV-11-922-D, 2013 WL 5303730, at *10 (W.D. Okla. Sept. 20, 2013) (holding that conduct which impeded officers' investigation into a domestic dispute call gave the officers "probable cause to believe he had committed a criminal offense of obstruction"); *see also United States v. Johnson*, 33 F. App'x 485, 486 (10th Cir. 2002) (holding that sufficient evidence existed to convict defendant of obstruction where defendant refused to comply with officer's instructions and impeded officer's efforts to handcuff him). As this Court has previously noted, "[t]here is no requirement that a person use physical force against a police officer in order to commit an offense under this statute." *Walker*, 2024 WL 3905733, at *11 (citing *Marsh v. State*, 761 P.2d 915, 916 (Okla. Crim. App. 1988)). "[W]ords alone may suffice to support a conviction for Obstructing an Officer." *Trent v. State*, 777 P.2d 401, 402 (Okla. Crim. App. 1989). Because Deputy Ballard and Deputy Davis had probable cause to arrest Plaintiffs,[14] they are entitled to summary judgment on the Fourth Amendment false arrest claims.

D

Plaintiffs assert that the Deputies illegally searched their car after the arrests. A warrantless search is per se unreasonable unless a valid exception to the Fourth Amendment's warrant requirements applies. *See, e.g., United States v. Lowe*, 999 F.2d 448, 451 (10th Cir. 1993) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971)). But it is not enough for Plaintiffs to show that the Deputies' search was unreasonable; to recover, they must also show that the search caused them "actual, compensable injury ... which ... does *not* encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned)." *Heck*, 512 U.S. at 487 n.7 (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986)). Here, even assuming

---

[14] And because the arrests were supported by probable cause, Plaintiffs cannot argue that their resistance was justified. *See, e.g., Chatman v. Buller*, No. 12-cv-182-JHP, 2013 WL 632355, at *9 (E.D. Okla. Feb. 20, 2013) ("Oklahoma courts recognize a limited right to resist an *unlawful arrest* under certain circumstances." (collecting cases)).

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

Plaintiffs demonstrate an illegal search, they have provided no evidence of an injury resulting from the search. No fruit of the search was used to convict either Plaintiff; they were never charged for any conduct involving the use of the axe. In the absence of a compensable injury resulting from the search, the Deputies are entitled to summary judgment on Plaintiffs' unreasonable search claims.

E

Plaintiffs' also claim the Deputies used excessive force during the arrests. To prevail on these claims, Plaintiffs must show "that the force purposely or knowingly used against [them] was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015); *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 664 (10th Cir. 2010). The Court must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citations omitted).

The Court considers three nonexclusive factors courts when assessing the reasonableness of an officer's use of force: (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officers or others;" and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)). A "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Thus, the reasonableness of "a particular use of force" must be assessed from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). *See Tenorio v. Pitzer*, 802 F.3d 1160, 1164 (10th Cir. 2015) ("The belief need not be correct—in retrospect the force may seem unnecessary—as long as it is reasonable."). A reviewing court "looks at the

14

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

facts and circumstances as they existed at the moment the force was used, while also taking into consideration the events leading up to that moment." *Emmett v. Armstrong*, 973 F.3d 1127, 1135 (10th Cir. 2020) (citation omitted).

With respect to the first *Graham* factor, felonies or crimes involving violent conduct are considered severe. *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021) ("[B]inding precedent indicates the first *Graham* factor weighs against the plaintiff when the crime at issue is a felony, irrespective of whether that felony is violent or nonviolent."); *Ibarra v. Lee*, No. 22-5094, 2023 WL 6939236, at *10 (10th Cir. Oct. 20, 2023) ("A felony or violent conduct justifies more force."). Although Plaintiffs were only arrested for obstruction, a misdemeanor, Deputy Ballard was investigating felony assault and battery with an axe, a crime involving violent conduct. *See, e.g., Andersen v. DelCore*, 79 F.4th 1153, 1164 (10th Cir. 2023) (finding that the severity of crime factor weighed in officer's favor because he was investigating the crime of child abuse, even though the suspect was arrested for the misdemeanor crime of obstructing an officer). The first *Graham* factor weighs in favor of the Deputies' use of force.

As to the second factor, Plaintiffs posed a moderate threat to the safety of the Deputies and others at the house. "Under the second factor, an officer may use increased force when a suspect is armed, repeatedly ignores police commands, or makes hostile motions towards the officer or others." *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020). To evaluate this factor, "courts must consider the level of threat posed *at the precise time* the officer used increased force." Walker, 2024 WL 3905733, at *7 (citing *Vette*, 989 F.3d at 1171).

From the beginning of the interaction, Plaintiffs were hostile and refused to answer Deputy Ballard's questions. Deputy Ballard had yet to locate the axe when Plaintiffs, who were beside the vehicle where a weapon could have been stored (and where one was later found), yelled at the Deputies and

15

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

refused their orders to provide identification or leave. Under these circumstances, the Deputies were entitled to use force to maintain order at the scene. *See, e.g., Tucker v. Haney*, No. 14-cv-04-GKF-PJC, 2014 WL 6074053, at *7 (N.D. Okla. Nov. 13, 2014) (holding that the second *Graham* factor weighed in favor of the officer because "[s]he had aggressively disrupted a situation in which a single officer was responsible for detaining and questioning three individuals," "threatened and cursed at her son[,] and refused the officer's order to back away."); *see also Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007) ("Under certain circumstances, the steps officers may permissibly take to protect their safety include drawing their weapons, placing a suspect in handcuffs, or forcing a suspect to the ground."); *see also Gallegos v. City of Colo. Springs*, 114 F.3d 1024, 1031 (10th Cir. 1997) (holding that the use of an arm bar maneuver and take-down of an individual was reasonable to protect the safety of two officers in light of the individual's "strange and aggressive conduct").

The third *Graham* factor weighs in favor of "'some degree of physical coercion or threat,' when an individual refuses to obey an officer's lawful orders[.]" *DelCore*, 79 F.4th at 1165-66 (quoting *Graham*, 490 U.S. 396; *Mecham v. Frazier*, 500 F.3d 1200, 1204-05 (10th Cir. 2007)). The Deputies gave Plaintiffs numerous opportunities to comply with instructions that would have facilitated their investigation. Instead, Plaintiffs refused to obey, yelled at the Deputies, and became increasingly hostile toward them as the interaction progressed. When the Deputies attempted to place Plaintiffs in handcuffs, neither complied. When the Deputies asked Plaintiffs to put their hands behind their backs, neither complied. When the Deputies warned Plaintiffs that they would be tased, neither complied. Plaintiffs concede that they resisted arrest until they were tased and ultimately handcuffed. Dkts. 122 at 13 (¶¶ 12-15); 132 at 10 (¶¶ 12-14). Each escalation in the level of force used by the Deputies was preceded by noncompliance and the Deputies' warnings that force would continue to escalate if noncompliance continued. *See, e.g.,*

16

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

*DelCore*, 79 F.4th at 1168 ("When an officer lawfully uses force but an individual resists that initial use of force, we think it obvious that the officer may use a greater degree of force than would have initially been appropriate to subdue the individual, obtain peace, and ensure that the officers had control over the situation.") The use of force and the degree of force used was reasonable under the circumstances, and Plaintiffs have not shown that the Deputies acted unreasonably considering Plaintiffs' actions. The third factor weighs in favor of the Deputies.

Based on the *Graham* factors analyzed above, a jury could not reasonably conclude that the Deputies' use of force was clearly unreasonable. The Deputies are entitled to summary judgment on Plaintiffs' Fourth Amendment excessive force claims.

V

The Court next turns to Anita's claim that her Fourteenth Amendment rights were violated while she was detained at the Washington County Jail. Anita first told Deputy Davis that she needed medical care while being transported to the jail. Dkt. 132-2 at 3 (¶13). She also told several Jail Officers that they were hurting her and that she needed medical attention. *Id.* (¶16); *Id.* at 4 (¶20). When taken to get processed, Anita was unable to walk, so the Jail Officers brought her a wheelchair. *Id.* (¶¶ 23-24). After being processed, Anita was released on bond and immediately sought medical care. *Id.* at 5 (¶¶ 26-27).

As a pretrial detainee, Anita was entitled to custodial medical care under the Due Process Clause of the Fourteenth Amendment. *See Estate of Beauford v. Mesa Cty.*, 35 F.4th 1248, 1262 (10th Cir. 2022) (indicating that the "right to custodial medical care is well settled").[15] A jail official violates

---

[15] There is no difference between the standard of medical care owed to convicted inmates under the Eighth Amendment and the standard applicable to pretrial detainees under the Due Process Clause. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

*(footnote continues)*

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

the Due Process Clause by acting with "deliberate indifference to an inmate's
serious medical needs." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). To
establish a right to relief for deliberate indifference under 42 U.S.C. § 1983, a
plaintiff must first show that she suffered from a sufficiently serious medical
need. *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1136-37 (10th Cir.
2023). This component, which is viewed objectively, is satisfied if the de-
tainee can point to a medical need that "'has been diagnosed by a physician
as mandating treatment or … is so obvious that even a lay person would easily
recognize the necessity for a doctor's attention.'" *Sealock v. Colorado*, 218
F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224
(10th Cir. 1999)). Next, the plaintiff must show that the officer subjectively
knew of "a substantial risk of harm and disregarded that risk, by failing to take
reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th
Cir. 2006) (internal quotation marks and citation omitted). In contrast with
the objective component, the subjective component hinges on the symptoms
displayed by the detainee.

Here, Anita has provided no evidence of how long she was detained,
other than the fact that she was released the same day as her arrest. Upon
release, she was taken to the emergency room at Jane Phillips Hospital. Anita
received x-rays, which were negative for any broken bones, and then decided
to leave without accepting any treatment.

For Anita to avoid summary judgment on her Fourteenth Amendment
claim, she was required to set forth facts demonstrating that the Jail Officers'
delay in meeting her serious medical need caused her substantial harm. *See
Sealock*, 218 F.3d at 1210. The Court has not seen evidence from which a jury
could find that the Jail Officers delayed or refused medical care. But even as-
suming the evidence could establish such delay, Anita's claim fails because

---

Because the analysis applied when reviewing violations of these provisions is the same, the
Court relies on authority concerning both types of cases. *Estate of Beauford*, 35 F.4th at 1262.

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

there is no evidence that the delay caused her any harm. *See Martin v. Tulsa Cty. Bd. of Comm'rs*, 99 F.3d 1150, at *1 (10th Cir. 1996) ("Postponing surgery for an extended period, even until the prisoner's release from prison, does not provide a cause of action for deliberate indifference to serious medical needs if the delay would not cause further damage."); *see also Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) ("[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.")

In the complaint, Anita described her injuries as post-traumatic stress disorder; aggravated anxiety with agoraphobia; ruptured and bulging discs in her back; nerve damage in her pinky finger, wrists, ankle, back, and leg; bruising and lacerations on her arms and legs; permanent bruising on her ankle; suspected deep vein thrombosis in her leg; and she is wheelchair bound due to these injuries. Dkt. 1 at 11. But she points to no evidence that any of these conditions worsened because of a delay in medical treatment, or that she suffered unnecessary pain. *See, e.g., Sandifer v. Green*, 126 F. App'x 908, 911 (10th Cir. 2005) ("[Plaintiff's] allegation that his condition deteriorated does not demonstrate a constitutional violation because he has not shown that the delays caused him substantial harm."). Anita received medical attention the same day she complained about her injuries and refused any treatment. Anita's failure "to establish the existence of an element essential to [her] case, … on which [she] will bear the burden of proof at trial," directs a finding that there exists "'no genuine issue as to any material fact.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quoting Fed. R. Civ. P. 56(c)). The Jail Officers are entitled to summary judgment on Anita's deliberate-indifference claim.

## VI

Anita also claims that the Jail Officers used excessive force when they carried her into the holding cell and removed her ring. Pretrial detainees are protected from the use of excessive force under the Fourteenth

19

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

Amendment's due process clause. *Rowell v. Bd. of Cty. Comm'rs of Muskogee Cty., Okla.*, 978 F.3d 1165, 1171 (10th Cir. 2020). An officer violates the Fourteenth Amendment by purposely or knowingly using force against a pretrial detainee that is "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).

The test for objective reasonableness turns on the "facts and circumstances of each particular case." *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The analysis must consider the "legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (brackets and quotations omitted). Factors the Court should consider in its objective reasonableness review are: (1) the relationship between the need for the use of force and the amount of force used, (2) the extent of the plaintiff's injury, (3) any effort made by the officer to temper or to limit the amount of force," (4) the severity of the security problem at issue, (5) the threat reasonably perceived by the officer, and (6) whether the plaintiff was actively resisting." *Id.*

Application of the *Kinglsey* factors shows that the Jail Officers' use of force to carry Anita into the cell and remove her ring while she was resisting was objectively reasonable. From the moment Anita arrived at the jail, she was noncompliant. The Jail Officers gave her several opportunities to walk before carrying her into the cell. Once in the cell, the Jail Officers gave her the opportunity to release her fist so they could remove the ring. She refused. There is no question that the Jail Officers have an interest in maintaining the safety of not only themselves but also the detainees by emptying the detainee's pockets and removing any jewelry. The Jail Officers reasonably used limited force necessary to obtain compliance with their lawful instructions. Anita has provided no evidence that she was injured by the limited amount of force used. The Jail Officers applied pressure to Anita to obtain compliance

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

with their standard safety procedures and only increased the force after warning Anita and being met with continued resistance. The Jail Officers are entitled to summary judgment on Anita's Fourteenth Amendment excessive force claim.

## VII

The Deputies and Jail Officers also argue they are entitled to qualified immunity from all of Plaintiffs' claims because the Plaintiffs failed to show that their actions violated clearly established constitutional rights. Dkt. 140 at 10. Qualified immunity protects police officers and public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted). When a defendant asserts qualified immunity, the plaintiff must respond by showing that (1) a reasonable jury could find facts supporting a violation of a constitutional right and (2) the right was clearly established at the time of the violation. *Wilkins v. City of Tulsa*, 33 F.4th 1265, 1272 (10th Cir. 2022) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). If the plaintiff fails to establish either prong, the defendant must be granted qualified immunity. *See, e.g., Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

Plaintiffs' response to the Defendants' assertion of qualified immunity is puzzling. They do nothing to address the standard outlined above. Instead, they respond as follows:

> Defendants MICHAEL KITCHENS et al. plead qualified immunity, claiming a reasonableness standard as to their conduct. *See* Defs. Mot. at 19 [Doc.122], *quoting Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). However, Circuit Judge Anderson's concurrence emphasized the test of "deliberate indifference" as part of that calculus. *Id.* at 1252. As argued, *supra*, the test in the Tenth Circuit for deliberate indifference has objective *and* subjective components. *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020). In this matter, Defendants were

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

deliberate[ly] indifferent to Plaintiffs' insistence that no crime
had been committed, to their physical and emotional needs,
etc. Defendants—especially Deputy Ballard and Deputy Da-
vis—displayed unjustified anger and aggression and failed to
employ all of the Use Force standards.

Dkt. 132 at 24.

Plaintiffs' response fails to cite authority to overcome the Defendants'
assertion of qualified immunity. Where a plaintiff fails to discuss whether the
rights were clearly established or fails to cite legal authority in response to an
assertion of qualified immunity, the defendant is entitled to qualified immun-
ity. *Rojas v. Anderson*, 727 F.3d 1000, 1004-05 (10th Cir. 2013); *see also Com-
prehensive Addiction Treatment Ctr., Inc. v. Leslea*, 552 F. App'x 812, 816 (10th
Cir. 2014) (defendants were entitled to qualified immunity where the district
court found that plaintiffs "[had] not cited any authority in which courts have
found that a plaintiff's constitutional right … was 'clearly established' in anal-
ogous factual situations"); *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir.
2013) (plaintiff failed to meet two-part burden where "[h]is response brief
failed even to include the terms 'qualified immunity' or 'clearly estab-
lished'"); *Gutierrez v. Cobos*, No. 12-980 JH/GBW, 2015 WL 13239103, at
*18 (D.N.M. May 1, 2015) (granting summary judgment where "Plaintiffs'
response fail[ed] to include any legal authority to show that … the right at
issue was clearly established at the time"). Plaintiffs' single-paragraph re-
sponse fails to carry the heavy burden necessary to overcome Defendants'
qualified immunity defense. Therefore, Defendants are entitled to qualified
immunity on all claims, and their motions for summary judgment are granted.

## VIII

Finally, the Court turns to Plaintiff's *Monell* claim against Sheriff
Owen. A suit against a sheriff in his official capacity is another way of pleading
an action against the county. *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir.
2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

But a county cannot "be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). To establish municipal liability, a plaintiff must show not only that the employees committed a constitutional violation but also that a policy or custom was the moving force behind the constitutional deprivations. *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1320 (10th Cir. 1998). A policy or custom can include:

> (1) a formal regulation or policy statement;
>
> (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;
>
> (3) the decisions of employees with final policymaking authority;
>
> (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or
>
> (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks and citations omitted).

Plaintiffs have not established constitutional violations by either the Deputies or the Jail Officers; accordingly, Plaintiffs' claims against the municipality also fail. *See Cummisky v. Mines*, 248 F. App'x 962, 967 (10th Cir. 2007) (affirming grant of summary judgment to municipality where no constitutional rights were violated). Furthermore, even if they could establish a constitutional violation, Plaintiffs have failed to present evidence of any custom, policy, or lack of training that led to the alleged constitutional violations. *See Carr v. Castle*, 337 F.3d 1221, 1231-32 (10th Cir. 2003). Thus, Sheriff Owen is entitled to summary judgment on Plaintiffs' *Monell* claims.

No. 22-cv-230
c/w Nos. 22-cv-231, 22-cv-274, 22-cv-275

IX

Plaintiffs have failed to provide sufficient evidence upon which a reasonable jury could determine that the Deputies or the Jail Officers violated their constitutional rights, and in any event, the Deputies and Jail Officers are entitled to qualified immunity from Plaintiffs' claims. Accordingly, the Deputies and Jail Officers' motion for summary judgment [Dkt. 122] is granted. Without an underlying constitutional violation or unconstitutional custom, policy, or training, Sheriff Owen's motion for summary judgment [Dkt. 120] must also be granted. With no claims remaining, Defendants' motion in limine [Dkt. 143] is denied as moot.

DATED this 17th day of June 2025.

_____
JOHN D. RUSSELL
*United States District Judge*